[Crim. No. 8274. First Dist., Div. Four. Sept. 30, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES A. DeLONG, Defendant and Appellant.

## COUNSEL

William R. Higham, Public Defender, and Stuart A. Safine, Deputy Public Defender, for Defendant and Appellant.

Paul N. Halvonik and Charles C. Marson as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and George R. Nock, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DEVINE, P. J.**—The constitutionality of two gun control statutes, Penal Code section 171e and Penal Code section 12031, subdivision (c), comes before us in an oblique way. The prosecution in this case was for violation of section 11530 of the Health and Safety Code by possession of marijuana. Appellant was convicted and was granted probation for three years upon conditions of his paying a fine and registering pursuant to relevant statutes. The marijuana was in plain sight when officers opened the trunk of appellant's automobile; wherefore, the legality of the opening is important, and that legality in turn depends on the constitutionality of the statutes mentioned above.

### Facts

The case was submitted on the municipal court transcript. A campus policeman at Diablo Valley College, using binoculars, saw a group of people gathered about a red automobile. A rifle was taken from the vehicle by appellant and was placed in a brown automobile. The brown vehicle departed. The officer saw two other firearms, which he thought were rifles, in the trunk of the red car. Appellant departed on foot, but returned a half hour later; meanwhile, an officer staked out the stationary red car. A deputy sheriff was sent to the scene. The deputy informed appellant, who was sitting at the wheel of the car, that he had been notified of the presence of rifles in the trunk of the car. Appellant denied the presence of any guns, whereupon the deputy requested appellant to open the trunk. Appellant replied that he did not have a key thereto. The deputy then ordered appellant to exit the vehicle. After appellant had alighted, he dropped a key. The officers opened the trunk with the key for the purpose of determining whether the guns therein were loaded. Discovered in the trunk were a rifle and a shotgun, both of which, upon examination, proved to be unloaded.

A quantity of marijuana was in plain view. Appellant was then placed under arrest for possession of marijuana. He had not violated any gun law.

## The Statutes

In 1967 the Legislature enacted section 171c of the Penal Code, which in substance makes it a crime (a possible felony) to bring a loaded firearm into or to possess a loaded firearm within the state Capitol, any legislative office, office of the Governor, or other constitutional officer or legislative committee room (none of these is involved in this case), or within or upon the grounds of any public school, the University of California, or state colleges. (Diablo Valley College is a public school.) Exceptions are made for certain officers and licensed persons. (Another section of the Penal Code, 171d, has to do with loaded firearms at legislators', the Governor's, and the officers' residences.)

In the same year, the Legislature enacted section 12031 of the Penal Code, which makes it a misdemeanor for any person to carry a loaded firearm "on his person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory." ("Prohibited area" is defined in subdivision (d) of the section as a place where it is unlawful to discharge a weapon.) Exceptions are provided for various kinds of officers, guards, etc. and for certain uses such as upon target ranges, at shooting clubs, and making a lawful arrest; and it is stated that it is not forbidden to have a loaded weapon at one's place of residence or at one's place of business, or under circumstances which cause a person reasonably to believe that the person or the property of himself or another is in immediate danger and that the carrying of the weapon is necessary for the preservation of person or property.

The definitions of a loaded firearm are different in the statutes affecting the carrying or possession of firearms in the two kinds of places. Penal Code section 171e, which implements section 171c and section 171d, provides that: "A firearm shall be deemed loaded for the purposes of Sections 171c and 171d whenever both the firearm and unexpended ammunition capable of being discharged from such firearm are in the immediate possession of the same person." Penal Code section 12031, subdivision (e) reads: "A firearm shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell, consisting of a case which holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when

it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder."

The statutes provide that whether or not a firearm is loaded for purpose of enforcing the respective statutes, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle and that refusal to allow a peace officer to inspect a firearm pursuant to statute constitutes probable cause for arrest for violation of the statute. (Pen. Code, §§ 171e, 12031, subd. (c).)

Although appellant actually was not carrying or in possession of a loaded firearm, he was seen to possess a firearm in a vehicle on the campus of a junior college. Section 171c seems to apply to this case rather than section 12031, because of the precise location of the firearm, namely, on the grounds of a school rather than in a vehicle, in any public place, or on any public street. Since the statutes relating to inspection of the firearms are essentially the same, it is not necessary to discuss the applicability of the one or the other of the statutes. Appellant was not charged with violation of any firearm statute, but with the possession of marijuana.

### Opening of the Trunk

Respondent suggests that the opening of the trunk by the officers was permissible regardless of the provisions of section 171e, wherefore the constitutionality of that section need not be decided. The argument is that probable cause to believe that the guns were loaded appears from the fact that appellant made two false statements to the officer and the officer knew them to be false. The first was appellant's denial that there were guns in the car, and the second, his saying that he had no key to the car. This gave rise to a reasonable belief, says respondent, that the guns were loaded or were stolen or were the instrumentalities of some crime.

We do not agree with this reasoning. The officers knew of no particular crime in which the guns might have been used, and they did not have probable cause for believing them to have been stolen merely from the fact that some exchange of articles, perhaps for money, had been made. Besides, the deputy sheriff testified that the purpose of opening the trunk was to see if the guns which were there were loaded weapons. Nor does the false statement that there were no guns in the car, as made by appellant, supply sufficient probable cause, apart from the statutes which are to be discussed under the next heading, to believe that the guns were loaded. Appellant's denial of the presence of the guns and also his dropping of the key, although they were evasive actions, would not, we believe, justify opening of the trunk in the absence of these statutes. There is no testimony by the officers that the false statements caused them to believe

that the guns were loaded. It may fairly be inferred from all of the testimony that if the appellant had responded truthfully that he had the guns and if the officers had the key, they would have opened the trunk.

■ On the other hand, if the officers had the right to make the inspection permitted by sections 171e and 12031, subdivision (c), of any firearm which had been brought on the college grounds or in a vehicle in a public place, appellant would not be entitled to prevent such inspection when it was known to the officers that the guns were in the vehicle, simply by closing the trunk. This does not mean that officers are entitled to open trunks of vehicles on the grounds of state institutions simply because there may be guns therein. It means that if the statutes which are to be discussed are valid, their objectives may not be frustrated simply by depositing firearms which have been exposed to view or which are otherwise known to the officers to be present in such part of the vehicle or in such container as obscures them from view.

### Constitutionality of the Inspection Statutes

■ Appellant contends that search requires probable cause and that there is no probable cause to believe that a firearm is loaded merely because it is in one of the places where it is illegal to carry or possess it. Appellant suggests that in order to justify a search for the weapon, it would be necessary that there be present such circumstances as: "If the weapon had been recently fired; if someone had been threatened; if the bolt had been drawn back; if the weapon were observed to have been loaded; if a riot were in progress; if this were a high crime rate area; if it were nighttime; if appellant were the suspect of some criminal activity; if there had been a warrant for appellant's arrest; if the rifle was in the passenger compartment; if smoke was seen coming from the barrel; or some other fact existed which would reasonably lead an officer to suspect the weapon was loaded." To require some of these conditions as a prerequisite of inspection would postpone examination until the penultimate act before firing, or indeed, until observation that firing had already occurred. To require others would delay it until there were riotous conditions, perhaps with the exhibition of many firearms. To require such a condition as the existence of an arrest warrant would be meaningless, because the weapon could not only be examined but seized in such case. All in all, if conditions such as those suggested were necessary, the statutes would be rendered nugatory.

We hold that the examination permitted by Penal Code section 171e and section 12031, subdivision (c) is constitutional and does not violate the Fourth Amendment. In the first place, the examination of the weapon

may hardly be deemed to be a search at all. The chamber of a gun is not the proper or usual receptacle for anything but a bullet or a shell. The loading of a gun simply affects the condition of the weapon by making it immediately useful for firing. The ammunition becomes, as it were, part of the gun. There is nothing private or special or secret about a bullet. The use of the word "examine" in the statutes instead of the word "search" is not at all a devious one. In examining the weapon, the officers are not attempting to find some kind of contraband which is unrelated to the gun itself.

But if the examination may be called a search, it is not an unreasonable one; and only unreasonable searches are forbidden by the Fourth Amendment. (*Terry* v. *Ohio*, 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868].) It is, as we have said, limited to a single purpose. It does not have about it any except the slightest element of embarrassment or annoyance, elements overbalanced by far by the purpose of preventing violence or threats of violence. The minimal intrusion does not begin to approach the indignity of the frisk, as graphically described in *Terry* v. *Ohio, supra,* at p. 17, fn. 13 [20 L.Ed.2d at p. 903]. It is true that the frisk, as sustained in the *Terry* case, requires as justification something different than mere possession of a firearm in a proscribed place, but it requires a good deal less than cause for arrest.

What is "probable" in the case of a weapon must be tested by different standards from those which apply to other objects. When a gun is pointed at a bank teller, he might indeed reason to himself that it is just as probable that the gun is unloaded as that it is loaded, and that unless there were some particular indication to the contrary, he might act with assurance in refusing the demands of the person exhibiting the gun. But the nature of weapons is such that one does not measure probabilities by the standards that apply to other objects. It is true, of course, that in this case there was no such threat as exists in the case of the bank teller, but on the other hand, the carrying of weapons, particularly if it were done in large numbers on a college campus or in the other places mentioned by the statutes, would produce a show of force even though the weapons, or some of them, were unloaded.

Bearing in mind that a state is free, as Chief Justice Warren put it, "to develop its own law of search and seizure to meet the needs of local law enforcement," provided, of course, that the Fourth Amendment standard of reasonableness be not offended (*Sibron* v. *New York,* 392 U.S. 40, 60-61 [20 L.Ed.2d 917, 933-934, 88 S.Ct. 1889]), we hold that the mere examination of a weapon which is brought into a place where it is

forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional.

In the brief filed by amicus curiae, American Civil Liberties Union, it is stated that the Legislature can, if it wishes, prohibit the carrying of firearms on campus, but cannot permit unloaded firearms to be so carried, modifying the permission with a power to inspect the weapons. It is argued that the legislative purpose is discriminatory because the wish of the Legislature is to give the police power to inspect firearms of persons whom they regard as suspicious and those whom they disfavor. Of course, legislation which is passed "with an evil eye and an unequal hand" (*Yick Wo* v. *Hopkins,* 118 U.S. 356, 373 [30 L.Ed. 220, 227, 6 S.Ct. 1064]), the legislative purpose being discriminatory enforcement, must be struck down. But there is not a shred of evidence in the record before us that the statutes in question have been enforced unequally.[1]

The exceedingly limited inspection permitted by the statutes in question, applied only to persons who do choose to carry firearms where loaded firearms are forbidden, comes well within the orbit of reasonable inspection or search.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 25, 1970.

---

[1]We do not know why the Legislature did not, as amicus curiae suggests in its brief it could have done, forbid firearms altogether on college campuses. Possibly it is because the Legislature at the same time was forbidding loaded weapons to be carried in many other places by Penal Code section 12031, and the Legislature did not care to go so far as to forbid all firearms, whether loaded or not. In any event, we discern no purpose of discrimination in the absence of evidence thereof.