[Crim. No. 34063. Second Dist., Div. Five. Sept. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EUGENE GREER et al., Defendants and Appellants.

**COUNSEL**

Herbert F. Blanck and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, Jonathan B. Steiner, Chief Assistant State Public Defender, and Michael Eugene Greer, in pro. per., for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STEPHENS, J.——Defendants Michael Eugene Greer and Frederick W. Williams were convicted of kidnaping (a violation of Pen. Code, § 207) and robbery (a violation of Pen. Code, § 211). In addition, gun use allegations under Penal Code sections 12022.5 and 1203.06, subdivision (a)(1), were found true. Both defendants appeal.

The facts giving rise to defendants' involvement are as follows: At approximately 5 a.m. Mr. Booker Powell was asleep in his automobile. He had returned to his home around 2 a.m., parked his Chrysler at the curb and fallen asleep. Defendants awoke Powell and, after each had threatened him with a .38 pistol, commandeered his car, robbed him of $6 or $7 and drove the car with Powell in it some three blocks before letting him out. Powell returned to his home, and reported the incident to the Compton police.

As defendant Williams drove the Chrysler at approximately 5:45 a.m., the car was observed to be weaving and traveling slowly by Deputy Sheriff Harvey and his partner, who were on patrol in the area. The sheriff then ordered the car to stop. Defendant Williams did so. He got out of the car and walked to the sheriff's car. He was patted down for weapons, but none were found. Greer, the passenger in the Chrysler, also exited, approached the sheriffs and underwent a pat-down with nothing being found. It was Deputy Sheriff Harvey's opinion that Williams was under the influence of marijuana, but that Greer was not.

Greer was observed to be dressed in khaki-colored clothes and was questioned as to his occupation. Greer stated that he was a security guard and had just gotten off work. Deputy Sheriff Harvey then asked Greer if he had a gun and was told that it was in the car and "believed to be" unloaded. Deputy Sheriff Harvey went to the car and seized two .38 pistols from inside a duffel bag which was on the front seat; one of the pistols was loaded and extra bullets were found in Williams' vest pocket. A wallet was found under the front seat of the Chrysler; it contained Powell's identification papers.

At some point after viewing the handguns, the deputy sheriff received a radio broadcast identifying the Chrysler as having been stolen. Communication was made with the Compton police and police officers arrived at the scene; they brought Mr. Powell with them. Powell identified both defendants as the perpetrators of the crimes involving him.

■ Both defendants contend that the search for the guns was illegal and that they should have been suppressed. While we conclude that the denial of the suppression motion was correct, we fail to see how a different result could be reached; hence, even assuming error, it would be harmless.

First: There is no question but that Powell was robbed at gunpoint by two robbers, each armed. There is no question but that Powell was forced to accompany the robbers for a distance of some three blocks before they released him.

Second: Powell identified the two defendants as the criminals. This identification was in the field and within approximately 45 minutes from the time he had been released.

Third: The defendants were the sole persons in control of Powell's car and Williams falsified his right to possession of the Chrysler.

As we have stated, however, there was no error in failing to suppress the weapons.

Penal Code section 12031 provides that everyone who carries a loaded firearm in a vehicle while on any public street is guilty of a misdemeanor. (The section is subject to certain exceptions not here applicable.) In addition, a portion of the section, i.e., subdivision (e) provides: "In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section."

Here, Greer stated that he had a firearm in the car and he expressed a belief that the firearm was unloaded. The statute gave the officer the right to examine the firearm to determine whether it was loaded.

Since the officer had the right to arrest Greer, had Greer refused to authorize an inspection of the firearm, in that such refusal would constitute probable cause for such arrest, the officer had the right to search and seize the firearm as incident to the arrest had there been a refusal

to permit inspection. Does the fact that no request was made make the search illegal and require suppression of the evidence? The answer is "No."[1] When it becomes known (as here by admission and by observation as in *People* v. *Kern, supra*, 93 Cal.App.3d 779 and *People* v. *DeLong* (1970) 11 Cal.App.3d 786 [90 Cal.Rptr. 193]), that a firearm is in the car, its seizure due to the mobility of the automobile is permissible. A firearm, loaded or not, is such an instrument of potential danger that the section gives the officer authorization to examine it. *People* v. *DeLong, supra*, should have put the issue raised here and in *Kern, supra*, to rest long ago. *DeLong* properly held: "On the other hand, if the officers had the right to make the inspection permitted by sections 171e and 12031, subdivision (c), of any firearm which had been brought on the college grounds or in a vehicle in a public place, appellant would not be entitled to prevent such inspection when it was known to the officers that the guns were in the vehicle, simply by closing the trunk. This does not mean that officers are entitled to open trunks of vehicles on the grounds of state institutions simply because there may be guns therein. It means that if the statutes which are to be discussed are valid, their objectives may not be frustrated simply by depositing firearms which have been exposed to view or which are otherwise known to the officers to be present in such part of the vehicle or in such container as obscures them from view." (11 Cal.App.3d at p. 791.)

Even with the right to arrest defendants for (1) driving under the influence of marijuana, and (2) possession of a loaded firearm in a vehicle, Deputy Sheriff Harvey was about to release the defendants, but did not do so only because of the Compton police robbery call. We therefore observe that the recovery of the guns did not lead to the defendants as the robbers, but constituted mere corroborative evidence in Powell's identification picture.

Powell's identification of defendants is questioned by seizing upon claimed conflicts of description. Whether one or both defendants wore a mustache at the time of the crime pales into unimportance. Powell said that both perpetrators were clean shaven, though he did not positively rule out the possibility of a mustache. The deputy sheriff similarly described defendants at the time of arrest. Powell recalled both persons in khaki; in fact, only one was so dressed at the time of arrest. At best, this was but an insignificant misrecollection, quite understandable un-

---

[1] We are cognizant of a contrary holding in *People* v. *Kern* (1979) 93 Cal.App.3d 779 [155 Cal.Rptr. 877], but can see neither logic nor reason for its result.

der the circumstances. When we consider defendants' defense we find, established to the hilt, that defendants were the sole possessors of Powell's vehicle from the time it was taken from him until time of arrest. Defendants would have had the jury believe that an unknown man loaned Williams the car while at some party, but he also stated that a "friend" owned it. Time and circumstance militated against the belief of defendants' imaginative reason for possession. ■ A like unmeritorious contention claims a *Miranda* warning should have been given Greer before asking him about guns. The officer had every reason to expect a security guard would have a weapon, and to ascertain its safe transportation was legislatively imposed on the officer. The questions asked in no way followed the "accusatory finger of suspicion."

The question raised as to the unduly suggestive identification in the field likewise fails. A single person lineup is not necessarily unfair (*People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]), and the circumstances existing in the instant case militated against any error due to situational suggestivity.

Evidence Code section 770 disposes of the claimed error in excluding the officer's testimony regarding Powell's preliminary hearing testimony. There was no error.

The failure to keep separate the bullets and to obtain fingerprints on the guns does not present a *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] problem. Powell's testimony adequately supplied evidence of gun use and defendants admitted possession though denied the offense charged.

In light of *People* v. *Sage* (1980) 26 Cal.3d 498 [165 Cal.Rptr. 280, 611 P.2d 874], we do not treat the contention re work credit; that is administrative at this juncture.

The judgments are affirmed.

Ashby, J., concurred.

KAUS, P. J.—I concur. The alleged illegal seizure of the pistols was utterly immaterial to the result. I would, therefore, affirm without disagreeing with *People* v. *Kern* (1979) 93 Cal.App.3d 779, 782-783

[155 Cal.Rptr. 877]. In any event, whether or not the search for and inspection of the guns was authorized by section 12031 of the Penal Code, the facts of this case obviously bring the doctrine of "inevitable discovery" into play. (See *People* v. *Superior Court·(Tunch)* (1978) 80 Cal.App.3d 665, 673-682 [145 Cal.Rptr. 795].)

Appellants' petition for a hearing by the Supreme Court was denied November 12, 1980.