*Supp. 3 Opinion
FOSTER, J.
Victor George Zonver was convicted of violating Penal Code section 12031, subdivision (a).[1] On this appeal from the judgment, we must decide whether a request must first be made of the owner of a firearm carried in a vehicle in a prohibited public place before a peace officer may enter the vehicle to examine the firearm pursuant to subdivision (e) of section 12031. We follow People v. DeLong (1970) 11 Cal.App.3d 786 [90 Cal.Rptr. 193] and People v. Greer (1980) 110 Cal.App.3d 235 [167 Cal.Rptr. 762] in holding that such a request is not an essential prerequisite to an entry and examination.
About midnight Officer Edward Kreins of the Beverly Hills Police Department, while on patrol, observed a white Cadillac sedan illegally parked in a loading zone in front of a restaurant. He was going to issue a citation but decided first to ask the restaurant parking lot attendant, Carlos Lopez, if he knew the owner. Lopez told him that it belonged to a police chief, because it had a telephone inside, antennas on the trunk, and a gun between the front seats.
By illuminating the interior of the Cadillac with his flashlight, Kreins could see the handle and trigger of a gun protruding from between the front seats. He could not see the chamber to determine whether it was loaded. He asked Lopez if he had a key, and when Lopez unlocked the door, Kreins went in and obtained the gun. When he examined it, he found it to be a revolver with five bullets in the cylinder, one being under the hammer. He took the serial number, replaced the gun where he had found it and locked the car.
Kreins checked by car radio with the records bureau and found both the gun and the automobile registered to defendant. There was no report of the gun having been stolen. Kreins did not know, however, whether Zonver had a permit to carry it.
As Kreins was completing his records check, Zonver and a female companion emerged from the restaurant, got into the Cadillac, and drove away. Following, Kreins called for assistance and stopped the *Supp. 4 Cadillac. After asking Zonver to alight, Kreins went to the Cadillac and observed the gun in the same location. He retrieved it and asked Zonver if he was in law enforcement or had a permit to carry a gun. When Zonver replied in the negative, he was placed under arrest.
Pursuant to Penal Code section 1538.5, Zonver moved to suppress evidence of Kreins’ examination of the gun, and his later statements to Kreins, as products of an illegal search. Relying upon People v. Kern (1979) 93 Cal.App.3d 779 [155 Cal.Rptr. 877], he urged that before Kreins could enter the Cadillac to examine the firearm he was obligated to seek out the owner of the firearm and request to examine it. There is no dispute that Kreins made no such request and that Lopez did not have Zonver’s permission to open the Cadillac for such an examination.
After reviewing People v. Kern, supra, and People v. Greer, supra, 110 Cal.App.3d 235, the trial judge denied the motion. Zonver then pleaded guilty, and judgment and this appeal followed. His sole contention on appeal is that as a legal requirement under subdivision (e) of section 12031 of the Penal Code, Kreins was obligated first to make a request of Zonver to inspect the gun before examining it. Absent such a request, he maintains, a peace officer must have independent probable cause to believe the gun loaded or there must exist exigent circumstances justifying a search before entering the vehicle.
On appeal, the People have suggested theories for upholding Kreins’ entry into the Cadillac alternative to subdivision (e) of section 12031 of the Penal Code. Defendant responds that these are theories not urged in the trial court but raised for the first time on appeal. Upon our examination of the record, we are unable to find any basis for the People’s alternative theories, or any evidence that they were urged or considered in the trial court. The only basis for an affirmance is subdivision (e) of section 12031 of the Penal Code.
Subdivision (e) of section 12031 provides: “(e) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section.”
*Supp. 5 Section 12031 of the Penal Code was enacted in 1967 as one section of a statute declared by the Legislature to be emergency legislation arising from a growing concern over an increase in the carrying of loaded firearms. The facts constituting the emergency were stated to be: “The State of California has witnessed, in recent years, the increasing incidence of organized groups and individuals publicly arming themselves for purposes inimical to the peace and safety of the people of California.
“Existing laws are not adequate to protect the people of this state from either the use of such weapons or from violent incidents arising from the mere presence of such armed individuals in public places. Therefore, in order to prevent the potentially tragic consequences of such activities, it is imperative that this statute take effect immediately.” (Stats. 1967, ch. 960, § 6.)
As part of the legislative scheme, section 12031 was enacted, prohibiting the carrying of a loaded firearm on the person or in a vehicle “while in any public place or on any public street . ... ” (Subd. (a).) Subdivision (e)[2] was included “for the purpose of enforcing this section” and authorizes peace officers, “[i]n order to determine whether a firearm is loaded” to conduct an examination of a firearm carried on the person or in a vehicle.
In the same statute, sections 171c and 171d of the Penal Code were enacted, prohibiting the carrying of loaded firearms in certain public buildings, in state universities and colleges, and in the residences or on the residential grounds of certain state officials. Section 171e was also enacted and made applicable to the enforcement of sections 171c and 171d. It contains language almost identical with that of subdivision (e) of section 12031, authorizing peace officers to examine any firearm carried on the person or in a vehicle, in the locations prohibited by sections 171c and 171d, to determine whether it is loaded. It may therefore be seen that authority to examine any firearm carried by anyone in a prohibited location on his person or in a vehicle, in order to determine whether it is loaded, was deemed by the Legislature integral to the enforcement of all three sections.
*Supp. 6 People v. DeLong (1970) 11 Cal.App.3d 786 [90 Cal.Rptr. 193], upheld the constitutionality of subdivision (e) of section 12031 and section 171e.[3] In that case, a campus police officer observed what appeared to be rifles in the trunk of an automobile and called a deputy sheriff to the scene. The deputy approached DeLong, who was seated behind the wheel of the automobile, and told him of the information he had received. DeLong denied the presence of guns in the trunk, and when requested to open it, denied having a key. He was ordered to alight and as he did so, he dropped a key with which the deputy opened the trunk. Inside were two rifles, which upon examination proved to be unloaded. But also in plain sight in the trunk was a quantity of marijuana. The appeal challenged an order of the trial court denying DeLong’s motion to suppress the marijuana.
After reviewing their statutory background, the Court of Appeal observed that under section 12031, subdivision (e), and section 171e, for the purpose of enforcing the respective statutes “peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle and .. . refusal to allow a peace officer to inspect a firearm pursuant to statute constitutes probable cause for arrest for violation of the statute.” (11 Cal.App.3d at p. 790.) Despite the urging of the People in that case, the court found no independent probable cause for examining the gun[4] apart from the authority given peace officers by the sections under review to examine firearms to determine whether they are loaded, but it found no necessity for the existence of. such independent probable cause. It rejected appellant’s suggestion that there must be other circumstances which of themselves would justify a search of the automobile, such as specific indicia that the gun was loaded, or evidence of a riot in progress, or facts implicating defendant in the commission of a crime or an outstanding warrant for his arrest, or a weapon in plain sight in the passenger compartment, pointing out that “if conditions such as those suggested were necessary, the statutes would be rendered nugatory.” (11 Cal.App.3d p. 791.)
*Supp. 7 In upholding the constitutionality of subdivision (e) and section 171e, the Court of Appeal noted the minimal intrusion into the privacy of the owner of a gun, which the statutes permitted, in an examination to see if it is loaded. It is barely equivalent to a search, but if it is a search, it is not an unreasonable one. Continuing, it stated: “What is ‘probable’ in the case of a weapon must be tested by different standards from those which apply to other objects. When a gun is pointed at a bank teller, he might indeed reason to himself that it is just as probable that the gun is unloaded as that it is loaded, and that unless there were some particular indication to the contrary, he might act with assurance in refusing the demands of the person exhibiting the gun. But the nature of weapons is such that one does not measure probabilities by the standards that apply to other objects. It is true, of course, that in this case there was no such threat as exists in the case of the bank teller, but on the other hand, the carrying of weapons, particularly if it were done in large numbers on a college campus or in the other places mentioned by the statutes, would produce a show of force even though the weapons, or some of them, were unloaded.
“Bearing in mind that a state is free, as Chief Justice Warren put it, ‘to develop its own law of search and seizure to meet the needs of local law enforcement,’ provided, of course, that the Fourth Amendment standard of reasonableness be not offended (Sibron v. New York, 392 U.S. 40, 60-61 [20 L.Ed.2d 917, 933-934, 88 S.Ct. 1889]), we hold that the mere examination of a weapon which is brought into a place where it is forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional.
“The exceedingly limited inspection permitted by the statutes in question, applied only to persons who do choose to carry firearms where loaded firearms are forbidden, comes well within the orbit of reasonable inspection or search.” (11 Cal.App.3d at pp. 792-793.)
In People v. Kern, supra, 93 Cal.App.3d 779, subdivision (e) again came under review. There, police officers investigating possible narcotics violations observed defendant Kern place a carbine in the trunk of an automobile. The vehicle was stopped to make a check on the weapon and to see if the vehicle had been stolen. An officer opened the trunk *Supp. 8 and discovered that the carbine was loaded and additionally found narcotics equipment, restricted drugs and a sawed-off rifle.
In the trial court, defendant’s motion to suppress the evidence seized from the trunk was granted. On appeal, the Court of Appeal affirmed, stating: “The question is whether the provision in section 12031, subdivision (e) that ‘refusal to allow a police officer to inspect a firearm pursuant to . . . this section constitutes probable cause for arrest for violation of this section,’ implies that a request to inspect must be made before there can be a lawful search. The trial court ruled that a request to inspect the firearm was a prerequisite to a search under this section. Because no such request was made in this case, the information was dismissed.” (93 Cal.App.3d p. 782.) Although the opinion does not directly answer the question posed, by affirming the trial court’s order of suppression, inferentially it found that such a request was a prerequisite.
Kern reviewed DeLong and noted its holdings that “‘the mere examination of a weapon which is brought into a place where it is forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional.’” (Kern, 93 Cal.App.3d at p. 782.) But it went on to state: “In DeLong, the court was only considering the propriety of the inspection of the firearm itself. The concern in the present case is not with the examination of the firearm but with whether the police officer was authorized to open the car trunk in order to inspect the weapon.” (P. 782.)
Essentially, although not stated explicitly, the Court of Appeal in Kern holds that, although the first sentence of subdivision (e) authorizes an examination of a firearm in a vehicle in a prohibited area to determine if it is loaded, a peace officer may not enter the trunk of a vehicle to conduct such an examination without some independent basis. It found in the second sentence a legislative purpose to avoid frustration of such an examination by making refusal to allow a police officer to inspect a weapon probable cause to arrest for a violation of section 12031, subdivision (a). However, “[i]n the present case, Harris made no request to inspect the firearm. Where there is no request there can be no refusal. Hence, section 12031, subdivision (e), did not justify an arrest, and the search was not incident to a lawful arrest.” (P. 782.) It acknowledged also that a police officer “could properly open the trunk if he had independent probable cause to believe that the weapon, which he knew to be inside, was loaded,” (p. 782) and it acknowledged that exigent circumstances would permit opening a trunk to search for a *Supp. 9 firearm, but it found present none of the circumstances providing a basis, independent of subdivision (e), for a search of the vehicle. (P. 783.)
Subsequently, the Court of Appeal in People v. Greer, supra, 110 Cal.App.3d 235, again reviewed subdivision (e). There, deputy sheriffs stopped an automobile being driven in an erratic manner and both occupants were ordered to alight. When Greer was asked if he had a gun, he replied that it was in the car and that he believed it to be unloaded. One of the deputies went to the vehicle and from a duffel bag on the front seat seized two .38 pistols, one of which was loaded. After the guns were seized, one of the deputies received a radio broadcast advising that the automobile which had been stopped was stolen. Later, additional information was received implicating Greer and his companion in a kidnaping and robbery which had occurred earlier that morning.
On appeal, Greer contended that the trial judge erred in denying his motion to suppress the guns. The contention was rejected by a majority of the justices, who stated: “Here, Greer stated that he had a firearm in the car and he expressed a belief that the firearm was unloaded. The statute gave the officer the right to examine the firearm to determine whether it was loaded.
“Since the officer had the right to arrest Greer, had Greer refused to authorize an inspection of the firearm, in that such refusal would constitute probable cause for such arrest, the officer had the right to search and seize the firearm as incident to the arrest had there been a refusal to permit inspection. Does the fact that no request was made make the search illegal and require suppression of the evidence? The answer is ‘No.’1 When it becomes known (as here by admission and by observation as in People v. Kern, supra, 93 Cal.App.3d 779 and People v. DeLong (1970) 11 Cal.App.3d 786 [90 Cal.Rptr. 193]), that a firearm is in the car, its seizure due to the mobility of the automobile is permissible. A firearm, loaded or not, is such an instrument of potential danger that the section gives the officer authorization to examine it.” (110 Cal.App.3d pp. 238-239.)[5]
Zonver urges us to follow Kern. He recognizes that the opinion in Greer “apparently is in disagreement with Kern. . ..but he contends *Supp. 10 that “the apparent holding in Greer” is “not necessary to the decision,” and its reasoning is “patently unsound.” We believe it clear that the holding in Kern conflicts with the holdings in Greer and DeLong. In that circumstance, this court “must make a choice between the conflicting decisions.” (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 456 [20 Cal.Rptr. 321, 369 P.2d 937].) We find the better reasoning in DeLong and Greer.
We believe first that Kern misinterprets DeLong. Although Kern cites DeLong with approval and presumes to follow it, Kern, in holding that some independent basis must be present before an entry into a vehicle to conduct the examination permitted by subdivision (e) of section 12031, distinguishes DeLong on the ground that in DeLong, “the court was only considering the propriety of the inspection of the firearm itself.” (93 Cal.App.3d at p. 782.) Kern overlooks the context in which the question arose in DeLong. There, the sheriff’s deputy opened the trunk of DeLong’s automobile, with the key he had dropped when ordered from the vehicle, in order to examine the rifles inside to determine if they were loaded. When the trunk was opened, the deputy found the rifles were unloaded, but he also observed marijuana inside. DeLong was not arrested for violating section 12031 of the Penal Code but for possession of marijuana, and he was convicted only of that offense. He sought only to suppress the marijuana and his appeal concerned only the denial of his motion. The deputy’s entry into the trunk could be justified solely by the authority of subdivision (e) or section 171e to examine the rifles to determine whether they were loaded. No independent basis had been established aiid the Court of Appeal found none necessary. In short, the only issue before the court in DeLong was whether the deputy’s entry into the trunk was justified solely by subdivision (e) or section 171e from the deputy’s knowledge it contained a firearm. DeLong held that the sections did justify such entry and the Legislature could constitutionally enact them. Probable cause for an examination arises from the inherently dangerous nature of a firearm, whether or not loaded, and “[t]he exceedingly limited inspection permitted by the statutes in question, applied only to persons who do choose to carry firearms where loaded firearms are forbidden, comes well with the orbit of reasonable inspection or search.” (11 Cal.App.3d at p. 793.)
Secondly, although it is questionable that Kern holds, as urged by Zonver, that subdivision (e) requires in every instance a request of the *Supp. 11 owner of a firearm before it may be examined,[6] we do not believe that the subdivision may be so read.
Subdivision (e) contains two sentences which, although dealing with the same problem, concern different aspects of it. The first is a grant of authority to peace officers to examine firearms in prohibited places to determine whether they are loaded. On its face it is unqualified and unconditional, providing that “peace officers are authorized to examine any firearm carried by anyone ... in a vehicle while in any public place or upon any public street .. .. ”
The second sentence preserves the peace officer’s authority to conduct such an examination, granted by the first, by providing that “[r]efusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section.” Thus, the second sentence creates a sanction for obstruction of the examination authorized by the first. The two sections thereby provide a consistent and coherent means of dealing with the problem of individuals arming themselves in public places, which the Legislature perceived to be of emergency proportion, by assuring that firearms so carried on the person or in a vehicle may be inspected to determine whether they are loaded.
A condition that a request for an examination of a firearm must be first made does not appear in subdivision (e) but, if it does exist, must be read in by implication. Although Kern reads a request for an examination as a condition precedent to the refusal subjecting an individual to arrest under the second sentence of subdivision (e), we would doubt that a refusal is restricted to a denial of a request. Thus, an individual carrying a firearm on his person or in a vehicle might interfere physically with the peace officer’s examination, or upon the officer’s *Supp. 12 approach he might attempt to secrete it, or to dispose of it by throwing it off a cliff or into the ocean. Any. of these methods would be equally obstructive of the enforcement of section 12031.
But if we assume that a request is a condition precedent to the refusal contemplated by the second sentence of subdivision (e), we perceive no basis for inferring a legislative intent to make a request a condition to the examination apparently explicity authorized by the first, particularly since to read such a requirement in would render the first sentence virtually redundant.[7]
We believe that DeLong is correct in interpreting subdivision (e) as providing probable cause for a peace officer to examine or “search” a firearm to determine whether it is loaded when it is brought into a location where a loaded firearm is prohibited. With probable cause to examine the firearm when it is located in a vehicle, a peace officer may seize it and examine it “by any means reasonably available.” (Wimberly v. Superior Court, supra, 16 Cal.3d 557, 571; People v. Cook (1975) 13 Cal.3d 663, 668 [119 Cal.Rptr. 500, 532 P.2d 148]; People v. Gregg (1974) 43 Cal.App.3d 137, 141-142 [117 Cal.Rptr. 496].) Officer Kreins’ directing of the parking lot attendant to open the Cadillac for such an examination was authorized under subdivision (e).[8]
*Supp. 13 The judgment is affirmed.
Jones, J., concurred.

“(a) Except as provided in subdivision (b), (c) or (d), every person who carries a loaded firearm on his person or in a vehicle in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory is guilty of a misdemeanor.”

OriginalIy, this subdivision appeared as subdivision (c) of section 12031. Later, it was renumbered as subdivision (e). Although confusion may arise when quotations and references are made to various decisions because of this change in numbering, at all times we refer to the same text, which has been unchanged since section 1203l’s original enactment.

Because the search in DeLong was of a motor vehicle on a junior college campus, the Court of Appeal believed it more likely that the potential offense was governed by Penal Code section 171c and hence section 171e, authorizing inspection, would be applicable rather than subdivision (e) of section 12031. The court found it unnecessary to decide the question because of the near identity of the wording in subdivision (e) and section 171e. “Since the statutes relating to inspection of the firearms are essentially the same, it is not necessary to discuss the applicability of the one or the other of the statutes.” (11 Cal.App.3d at p. 790.)

Merely observing a firearm, without additional grounds for suspicion, does not provide probable cause to believe it loaded in violation of section 12031 and thus subject to *Supp. 7 search and seizure as evidence of the commission of a crime. (People v. Muniz (1970) 4 Cal.App.3d 562, 567 [84 Cal.Rptr. 501].)

Footnote 1 reads: “We are cognizant of a contrary holding in People v. Kern (1979) 93 Cal.App.3d 779 ..but we can see neither logic nor reason for its result.”

As we read Kern, it was concerned only with whether or not there was an independent basis for entering the trunk of the vehicle. A violation of the second sentence of subdivision (e), i.e., a “[r]efusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section,” constitutes probable cause for an arrest for carrying a loaded firearm. A search of the vehicle would normally be justified as incident to the arrest for an offense of this nature. (Wimberly v. Superior Court (1976) 16 Cal.3d 557, 563-564 [128 Cal.Rptr. 641, 547 P.2d 417]; People v. Jochen (1975) 46 Cal.App.3d 243, 247 [119 Cal.Rptr. 914].) Kern implied the necessity of a request as a condition precedent to a refusal so as to trigger the second sentence, and without it there could be no arrest and no search incident to an arrest. Thus Kern’s discussion of the absence of a request could be construed as limited to the specific facts of that case and not as an intent to announce a rule of general application, that a request must precede an examination under subdivision (e).

That result follows of logical necessity. If a request is acceded to voluntarily, whatever authority is granted in the first sentence is superfluous, since the examination would then be by consent. If it is refused, an examination of the weapon would be authorized as incident to the arrest allowed by the second sentence, and the first sentence is again superfluous. It would be only in those instances in which the request is acceded to involuntarily or there was no one present of whom to make a request that the section would have any meaning. In the former instance, and only in that instance, subdivision (e) would have a meaning, of then allowing an examination whenv there would be no other basis for it. In the latter, if a request were necessary, the peace officer presumably would have to wait until someone appeared (which might be never if the possessor of the weapon were aware of the officer’s presence), or the officer would have to conduct a search to try to locate the possessor. We see no reason why the Legislature would choose to adopt this indirect and convoluted approach to allowing examination of firearms when, as indicted in DeLong and, not challenged in Kern, it could constitutionally authorize an examination directly.

The dissenting opinion challenges the reasoning of the Court of Appeal in DeLong in upholding the constitutionality of subdivision (e) [then subd. (c)] of section 12031 and section 17 le of the Penal Code as authority for the search there under review.
Were the question an open one, we would find those sections constitutional. Although we have not canvassed the decisions to ascertain whether, as suggested in the dissent, there are only five categories of circumstances permitting search of a vehicle aside from the authority of the sections in question, we are mindful of the words of Chief Justice Warren in Sibron v. New York (1968) 392 U.S. 40, 60-61 [20 L.Ed.2d 917, 934, 88 S.Ct. 1889], that each state, within the constraints of the Fourth Amend- *Supp. 13 merit, is free “to develop its own law of search and seizure to meet the needs of local law enforcement.” While most developments have arisen from judicial decisions (see, e.g., People v. Zelinski (1979) 24 Cal.3d 357, 363, fn. 7 [155 Cal.Rptr. 575, 594 P.2d 1000]), the Legislature is not impotent to develop laws authorizing search to meet a felt necessity. (E.g., Pen. Code, § 490.5 [as amended by Stats. 1981, ch. 650, § 1], which, to meet the growing problem of shoplifting, authorizes merchants and employees of library facilities upon detention of a person suspected of taking items, to conduct “a limited and reasonable search” of “packages, shopping bags, handbags or other property in the immediate possession of the person detained,” a grant of authority to those merchants and employees not previously enjoyed under the law. Cf. People v. Zelinski, supra.) We have no doubt that the extraordinarily lethal potential of firearms, which in the United States kill and maim literally thousands of people each year, provides ample reason for the Legislature to invest peace officers, knowing that a firearm is being carried on the person or in a vehicle in a prohibited area, with authority to take whatever steps are reasonably necessary to examine the weapon in order to determine whether it is loaded.
But the question is not an open one. DeLong holds squarely that those sections are constitutional. No other appellate decision holds that they are not, but to the contrary, all, including Kern (see 93 Cal.App.3d at p. 782), agree with this holding. As an inferi- or court, we are bound by DeLong, and should we seek to depart from its holding we would exceed our jurisdiction. (Auto Equity Sales, Inc. v. Superior Court, supra, 57 Cal.2d at p. 457.)