[Crim. No. 15539. Fourth Dist., Div. One. Oct. 25, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD RICHARD AZEVEDO, Defendant and Appellant.

COUNSEL

Jonathan M. Purver, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Gerald Richard Azevedo appeals the judgment entered on a jury verdict convicting him of possessing a sawed-off shotgun. (Pen. Code, § 12020, subd. (a).)[1]

Possessing a sawed-off shotgun is lawful unless the barrel is "less than 18 inches in length" or the weapon "has a overall length of less than 26 inches." (§ 12020, subds. (a) and (d)(1).)[2] The principal issue here is whether a violation of section 12020, subdivision (a) requires proof of a defendant's knowledge of the unlawful dimensions. Alternatively, may a defendant successfully defend on the ground he reasonably believes in good faith the weapon was of lawful dimensions? After our examination of the legislative intent underlying the statute, we hold possessing a sawed-off shotgun is a criminal offense regardless of the defendant's good faith belief that the weapon is of lawful size. Provided a person knows the weapon is a sawed-off shotgun, knowledge of the dimensions is neither an element of the offense which must be proved, nor a defense which a defendant may assert. We also conclude Azevedo's remaining contentions are without merit and affirm the judgment.

*Factual and Procedural Background*

Oceanside Police Officers Davis and Ziegler were on duty at a motel when Davis saw a man place a shotgun in the rear seat of a parked car. The

---

[1] All statutory references are to the Penal Code.

[2] Section 12020 provides in pertinent part: "(a) Any person in this state who . . . possesses any . . . sawed-off shotgun . . . is guilty of a felony . . . .

". . . . . . . . . . . . . . . . . . . . . . . . .

"(d)(1) As used in this section a 'sawed-off shotgun' means any firearm (including any revolver) manufactured, designed, or converted to fire shotgun ammunition having a barrel or barrels of less than 18 inches in length, or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by manufacture, alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches."

officers drew their weapons and ordered the occupants out of the car. Azevedo was the driver. The officers retrieved a sawed-off shotgun from the back seat of the car. Measurement later disclosed the barrel was 16½ inches long with the bolt forward and 19½ inches long with the bolt back. The gun's overall length was 35 inches.

Azevedo was charged with unlawfully possessing a sawed-off shotgun and a switchblade knife. (§ 653k.) Before trial the court denied Azevedo's section 1538.5 motion to suppress the shotgun. During trial Azevedo successfully moved for a judgment of acquittal on the switchblade offense. (§ 1118.1.) The jury convicted Azevedo of unlawfully possessing the shotgun.

*Discussion*

I

Azevedo attempted several times during trial to persuade the court that knowledge of the contraband character of a shotgun (i.e., barrel length less than 18 inches or overall length less than 26 inches) is an element of a section 12020, subdivision (a) offense. The court rejected Azevedo's efforts and instructed the jury the People need only prove Azevedo (1) exercised control or had the right to exercise control over a sawed-off shotgun, and (2) knew of the presence of the sawed-off shotgun. (CALJIC No. 12.35 (1979 rev.).)

To support his argument Azevedo relies primarily on *People* v. *Prochnau* (1967) 251 Cal.App.2d 22 [59 Cal.Rptr. 265]. Prochnau was convicted of possessing three contraband items: a sawed-off shotgun (§ 12020, subd. (a)), a concealable firearm (§ 12021, subd. (a)) and morphine. (Health & Saf. Code, former § 11500.) In rejecting Prochnau's challenge to the sufficiency of the evidence the court stated "that to establish unlawful possession of a contraband object it must be shown that the defendant exercised dominion and control over the object with knowledge of its presence and *contraband* character." (*Id.*, at p. 30, italics supplied.) The court based this statement on an earlier case involving the possession of heroin in violation of Health and Safety Code, former section 11500. (*People* v. *Redrick* (1961) 55 Cal.2d 282, 283, 285 [10 Cal.Rptr. 823, 359 P.2d 255], cited in *People* v. *Prochnau, supra,* 251 Cal.App.2d at p. 30.) Thus, even though narcotics oriented in its source and technically dictum due to the reversal on other grounds, *Prochnau*'s list of required elements appears to apply to the shot-

gun and concealable firearm offenses as well as to the morphine offense.

The Attorney General responds by citing cases which stress the serious dangers sawed-off shotguns present to society and which describe the purpose of section 12020 as outlawing possession of a class of instruments normally used only for criminal purposes. (*People* v. *Satchell* (1971) 6 Cal.3d 28, 41-42 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *People* v. *Favalora* (1974) 42 Cal.App.3d 988, 992-993, 995 [117 Cal.Rptr. 291]; *People* v. *Stinson* (1970) 8 Cal.App.3d 497, 500-501 [87 Cal.Rptr. 537]; *People* v. *Wasley* (1966) 245 Cal.App.2d 383, 386 [53 Cal.Rptr. 877]; *People* v. *Guyette* (1964) 231 Cal.App.2d 460, 467 [41 Cal.Rptr. 875].) Consequently, possessing a sawed-off shotgun is "illegal per se." (*People* v. *Favalora, supra,* 42 Cal.App.3d at p. 995, citing *People* v. *Stinson, supra,* 8 Cal.App.3d at p. 501.) The People need not prove the shotgun is operable (*People* v. *Favalora, supra,* 42 Cal.App.3d at pp. 991, 994-995) or even assembled and ready for immediate use. (*People* v. *Guyette, supra,* 231 Cal.App.2d at p. 467.) The People also need not show the defendant contemplated an unlawful use for the shotgun (*People* v. *Stinson, supra,* 8 Cal.App.3d at p. 501) or had an intent or propensity for violence. (*People* v. *Satchell, supra,* 6 Cal.3d at p. 42; *People* v. *Favalora, supra,* 42 Cal.App.3d at pp. 993, 994.) This strict interpretation of section 12020, subdivision (a) would seem to apply equally to Azevedo's proposal to require proof of a defendant's knowledge of the contraband character of a shotgun.

We believe the reasoning and analysis in *People* v. *Corkrean* (1984) 152 Cal.App.3d 35 [199 Cal.Rptr. 375] is persuasive. Corkrean was convicted of possessing a machinegun in violation of section 12220. A machinegun is defined as an automatic weapon. (§ 12200.) The question presented was "whether an element of the crime proscribed by section 12220 is knowledge that the weapon possessed is an automatic one." (*Id.,* at p. 36.) Was proof required of Corkrean's knowledge of the contraband character of his weapon? After comprehensively reviewing the history and terminology of the Dangerous Weapons' Control Law (§§ 12000-12601), the court held no such proof was required explaining: "The Dangerous Weapons' Control Law, as initially enacted in 1953 [citation], prohibited any possession of a machine gun (§ 12220) and any possession of specified dangerous weapons (§ 12020), but prohibited only *knowingly* possessing tear gas or a tear gas weapon (§ 12420). Through subsequent amendments, The Dangerous Weapons' Control Law now additionally prohibits possessing or *knowingly* transporting specified fixed ammunition (§ 12304 . . .), *knowingly* permitting another to carry a loaded weapon in one's car (§ 12034 . . .), and *knowingly* possessing and *knowingly* transporting specified handgun ammunition (§§ 12320, 12321 . . .). The Legislature's repeated selected use

of the word 'knowingly' throughout The Dangerous Weapons' Control Law thus supports the *Daniels*[3] court's conclusion that, in the weapons field, the Legislature has consciously distinguished between possessory and other offenses requiring knowledge, and possessory offenses punishable without regard to the defendant's awareness of the character of the item possessed." (*People* v. *Corkrean, supra,* 152 Cal.App.3d at pp. 39-40, original italics.)

■ The foregoing analysis applies to the statute before us. The absence of the word "knowingly" in section 12020, subdivision (a) reflects the Legislature's intent that possessing a sawed-off shotgun is a crime even though the defendant does not know the dimensions of the weapon or reasonably believes those dimensions bring the weapon within lawful limits.

In reaching this conclusion, we are well aware that at common law " ' "an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense. . . ." ' (*Matter of Application of Ahart* (1916) 172 Cal. 762, 764-765 [159 P. 160], quoting from *Regina* v. *Tolson*, [1889] 23 Q.B.D. 168, s.c., 40 Alb. L.J. 250.)" (*People* v. *Hernandez* (1964) 61 Cal.2d 529, 535 [393 P.2d 673, 8 A.L.R.3d 1092].) Nonetheless, there are numerous instances where culpability has been completely eliminated as a necessary element of criminal conduct. (*Id.,* at p. 532.) The case before us is one of those instances where it is evident that the public policy considerations relating to the substantial harm associated with possessing a dangerous or deadly weapon prompted the Legislature to delete the need for a person to know the contraband character of that weapon. It is not a heavy burden for a person who knowingly possesses a sawed-off shotgun to first determine the dimensions of that weapon or otherwise possess it at his or her own peril.

## II

Azevedo notes section 12020 does not define the term "barrel" as used in subdivision (d)(1). He says this omission makes it unclear whether the barrel of a sawed-off shotgun ends at the face of the closed bolt or the open bolt. He argues this uncertainty must be resolved in his favor by defining barrel length in terms of an open bolt, thus requiring reversal because the 19½-inch barrel of his shotgun exceeded the statutorily set maximum length for a sawed-off shotgun. (See § 12020, subd. (d)(1), *supra.*)

---

[3]*People* v. *Daniels* (1953) 118 Cal.App.2d 340, 343-345 [257 P.2d 1038], held knowledge of the contraband character of the weapon is not an element of possession of a machinegun in violation of section 12220.

■ "Generally, the provisions of a penal statute are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice. [Citations.] When the statute is susceptible of two reasonable constructions, however, the defendant is ordinarily entitled to that construction most favorable to him. [Citations.]" (*People* v. *Superior Court (Douglass)* (1979) 24 Cal.3d 428, 435 [155 Cal.Rptr. 704, 595 P.2d 139].) Applying these principles, we conclude the term "barrel" in section 12020, subdivision (d)(1) is to be defined without regard to either the closed or the open bolt. The barrel of Azevedo's shotgun was a distinct part of his weapon which could be and was removed from the stock and the receiver for separate measurement. When so removed and measured apart from the bolt or any other piece of the gun, the barrel was approximately 16½ inches long. Separate measurement of the barrel conforms to the method used in *People* v. *Favalora, supra,* 42 Cal.App.3d 988, where a rifle was treated as a sawed-off shotgun within the meaning of section 12020, subdivision (d)(1) because its barrel, without a bolt or a firing pin, was less than 16 inches long. (*Id.,* at pp. 990-991.) Separate measurement also represents a practical construction of section 12020, subdivision (d)(1) which is consistent with the functional definition the average person would likely ascribe to the term "barrel" as applied to a weapon. (See *People* v. *Heffner* (1977) 70 Cal.App.3d 643, 649 [139 Cal.Rptr. 45] [interpretation of "barrel" in § 12001, subd. (a)].) Finally, separate measurement advances the protective purposes the Legislature intended section 12020 to serve. (See *ante.*) We therefore conclude the term "barrel" in section 12020, subdivision (d)(1) is not ambiguous or unclear and is not reasonably susceptible of the interpretation Azevedo suggests.

## III

About midway through their deliberations, the jury sent the court a note asking the following question: "Does the presence of a sawed-off shotgun in a car constitute control of that weapon by the driver?" After conferring with counsel, the court responded: "You must determine the facts and apply the law to those facts. That's the answer." Azevedo claims the court's incorrect response requires reversal.

■ The jury's question concerns the first element of a section 12020, subdivision (a) offense: that the defendant exercised control or had the right to exercise control over a sawed-off shotgun. The jury had been properly instructed on this point. The court had given CALJIC No. 12.35 (1979 rev.): "The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over a thing is then in actual possession of it.

"A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it.

"The law recognizes that one person may have possession alone, or that two or more persons jointly may share actual or constructive possession." The jurors were also instructed they had two duties to perform: to determine the facts of the case from the evidence received at trial and to apply the rules of law provided by the court to the facts so as to reach a verdict. (CALJIC No. 1.00 (1979 rev.); see §§ 1126, 1127; Evid. Code, § 312.) In light of these proper instructions the court adequately responded to the jury's inquiry.[4]

## IV

Azevedo challenges the court's denial of his suppression motion claiming the court erroneously concluded the officers were not required to request permission to seize and inspect the shotgun.

■ Davis and Ziegler stopped Azevedo's car to determine whether the shotgun Azevedo had placed on the back seat was loaded. With exceptions inapplicable here, section 12031, subdivision (a) makes it a misdemeanor for any person to carry "a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory . . . ." To facilitate enforcement of subdivision (a), subdivision (e) provides: "(e) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section."

Must a police officer first request permission before entering the passenger compartment of a vehicle to seize and inspect a firearm pursuant to section 12031, subdivision (e)? The trial court concluded: "I am satisfied there is some confusion of the law, but I'm satisfied that an officer doesn't have to

---

[4]Azevedo's brief suggests the court had a *sua sponte* obligation to tell the jury "the mere fact that a gun is found in a car occupied by the defendant and another person is insufficient to prove the defendant had the gun under his control." (See *United States* v. *Bernel* (9th Cir. 1983) 719 F.2d 1475, 1479.) While it is always preferable for a jury's legitimate inquiry, given the correct prior instructions we cannot conclude the court's failure to amplify those instructions *sua sponte* in accord with *Bernal* was error.

ask for permission to inspect a weapon. I agree there seems to be some controversy, but I think that's the law today. So the motion to suppress is denied.'' We agree.

The conflicting authorities in this area are thoroughly reviewed and debated by the majority and dissenting opinions in *People* v. *Zonver* (1982) 132 Cal.App.3d Supp. 1 [183 Cal.Rptr. 214]. No purpose would be served by repeating that discussion. We agree with *Zonver's* holding that section 12031, subdivision (e) provides probable cause for a police officer to enter the passenger compartment of a vehicle to seize and inspect a firearm to determine whether it is loaded, and thus no prior request to do so is necessary. (*Id.*, at pp. 3, 11-12.)

Even if a prior request were necessary the weapon would have been discovered. Based on their observation of Azevedo as he placed the shotgun in his car, Davis and Ziegler properly stopped the car to investigate whether Azevedo was engaged in a criminal violation of section 12031, subdivision (a). (See *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].) If the officers had sought permission to seize and inspect the gun, Azevedo would have either consented or refused. His consent would have validated the seizure and inspection of the gun. (See *People* v. *Zonver, supra,* 132 Cal.App.3d Supp. at p. 14, (dis. opn. of Bernstein, P. J.), and cases cited.) His refusal, however, would have resulted in his arrest (see § 12031, subd. (e), *ante*) which, in turn, would have validated seizure and inspection of the gun incident to the arrest. (See *People* v. *Zonver, supra,* 132 Cal.App.3d Supp. at pp. 13-14 (dis. opn. of Bernstein, P. J.), and cases cited.) Thus, given the inevitability of the officers' seizure and inspection of the gun and discovery of its contraband character, the court correctly denied Azevedo's motion to suppress. (See *People* v. *Greer* (1980) 110 Cal.App.3d 235, 241 [167 Cal.Rptr. 762] (conc. opn. of Kaus, P. J.).)

V

Azevedo finally argues his conviction must be reversed because the court allegedly granted his motion for acquittal on the sawed-off shotgun offense.

■ A judgment of acquittal under section 1118.1 is deemed entered as of the moment the court orally grants a defendant's motion for acquittal. (*People* v. *Moran* (1973) 33 Cal.App.3d 724, 728 [109 Cal.Rptr. 287].) Once entered, that judgment may not be vacated (*id.*, at pp. 727-728) or appealed (§ 1118.2) and is a bar to further prosecution for the same offense. (*Ibid.*) If the court below indeed granted Azevedo's motion for acquittal on the shotgun offense, his conviction must be reversed. (See *People* v. *Moran,*

*supra,* 33 Cal.App.3d at p. 728.) The real question is whether the court granted the motion.

Unfortunately, there is some conflict in the record as to the court's disposition of Azevedo's motions for acquittal. The shotgun offense was charged as count 1; the switchblade offense as count 2. Azevedo moved for an *acquittal* of count 2. The court reporter recorded the court's ruling as follows: "As to count *1,* the motion is granted." The court minutes further confuse matters by noting Azevedo's motion to *dismiss* count 2 was granted. Following the motion to acquit on count 2, the defense orally moved for an *acquittal* as to count *1.* After some discussion, the court ruled: "[T]he motion to *acquit* as to count *1* is denied." The court minutes also show the denial of a motion to *acquit* as to count *1.* Later, while discussing jury instructions, the court told counsel it would "inform the jury before your argument that the court has acquitted Mr. Azevedo of count 2." The court told the jury: "You are going to be asked to render your finding as to guilt or innocence only as to count 1; the possession of a sawed-off shotgun. You will not have to make a decision as to count 2 because the court has already found him not guilty of that offense." The court minutes are in accord: "The jurors are present and seated. Court informs the jurors that they are only concerned with Count 1 because the Court has already found the defendant Not Guilty of Count 2 . . . ."

■ When faced with conflicts in the record, we must consider the circumstances of the proceedings in the particular case and rely on that part of the record which, because of its origin or nature or otherwise, is entitled to greater credence. (*People* v. *Smith* (1983) 33 Cal.3d 596, 599 [189 Cal.Rptr. 862, 659 P.2d 1152]; *People* v. *Prochnau, supra,* 251 Cal.App.2d at pp. 24-25.) Viewing the above excerpts from the record as a whole, we are satisfied Azevedo separately moved for an acquittal on both counts and that his motion was granted as to count 2 but denied as to count 1. Consequently, the issue of Azevedo's guilt or innocence under section 12020, subdivision (a) was properly presented to and decided by the jury.

*Disposition*

Judgment affirmed.

Work, J., and Butler, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 20, 1984.