[Crim. No. 30343. Second Dist., Div. Five. Aug. 10, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES WALDO JONES, Defendant and Appellant.

---

**COUNSEL**

Jonathan K. Golden and Arthur Sherman for Defendant and Appellant.

Burt Pines, City Attorney, Ward G. McConnell and Peter Alan Ross, Deputy City Attorneys, for Plaintiff and Respondent.

---

**OPINION**

**HASTINGS, J.**—Defendant was found guilty in municipal court of unlicensed possession of a concealable firearm (Pen. Code, § 12025) and carrying a loaded firearm in a vehicle (Pen. Code, § 12031). He appealed. The matter is before us on certification from the appellate department of the superior court (rules 62, 63, Cal. Rules of Court).

Defendant's sole contention on appeal is that the search which revealed the weapon was unconstitutional. The facts are these: At about 10:30 p.m. on May 17, 1976, Officer Bowermaster, while on patrol, observed defendant's car being driven without rear license plate illumination. (Veh. Code, § 24601.) He stopped defendant to advise him of the violation and asked to see defendant's driver's license. Defendant produced a two by three-inch photograph of himself in a police uniform. Bowermaster told defendant that was not good enough, that he needed some type of identification. Defendant produced numerous police council I.D. cards, stating that he was with the Southwest Division Police Council and that he was a clergyman. Bowermaster asked defendant for his driver's license and his vehicle registration slip. Defendant produced a five by seven photograph of himself in a police uniform. The officer again requested defendant's driver's license and vehicle registration. Defendant produced them and told Bowermaster that he was a reserve policeman for the City of Los Angeles. The photographs which defendant had shown Bowermaster depicted him in an LAPD uniform, but wearing some type of badge other than a LAPD badge.

Bowermaster questioned defendant to learn if he really was a reserve officer.[1] Defendant did not know such basic information as when a reserve officer works, how much they are paid, how long they have to attend the police academy, nor could defendant say when he himself had left the academy. Defendant stated that he had actually been retired from reserve officer status for four years.

Bowermaster believed that defendant might be impersonating an officer and that he might be armed. Bowermaster asked defendant if he had a weapon on his person or in the car. Defendant said that he did not. Bowermaster asked defendant to step out of his car so that he could continue his investigation. He frisked defendant but found no weapon. Because of conflicting statements defendant had made in the course of their conversation, Bowermaster suspected that defendant might be lying as to the presence of a weapon in the car. Bowermaster therefore asked if defendant minded if he checked the vehicle for weapons. Defendant said, "Not at all," that the officer should feel free to do so. Bowermaster checked the interior of the car and the glove compartment. He found no

---

[1]The officer testified that he received information at roll call regarding persons impersonating off-duty policemen. Defendant successfully objected to this evidence citing *People v. Harvey*, 156 Cal.App.2d 516 [319 P.2d 689], and *People v. Madden*, 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971], and the trial court ordered it stricken. It thereafter formed no part of the court's consideration of the sufficiency of the evidence to justify the officer's conduct.

weapons. He then asked defendant if he had any weapons in the trunk. Defendant said that he did not. Bowermaster asked if he could check and defendant said that he could. Bowermaster opened the trunk and observed a small briefcase inside. He asked defendant if it was his and was told that it was. He then asked if he could open it. Defendant said that he could. The officer found a loaded 357 Magnum inside. Approximately 10 minutes elapsed from the time defendant was stopped until the time the weapon was found.

Defendant testified in his own behalf. He was very indefinite as to when he had been a reserve officer. When he told Bowermaster that he did not have a weapon in the car he had forgotten about the gun in the briefcase. He claimed that the officer did not ask directly for permission to search, but rather told defendant that he would search and if he did not find anything defendant could leave, to which defendant said. "O.K." The court found that the search had been conducted pursuant to a valid consent.

■ On appeal defendant contends that the consent to search was vitiated by the prolonged detention and interrogation which preceded it and that, in any event, the scope of the search exceeded the parameter of the consent. Defendant relies on *People* v. *Grace,* 32 Cal.App.3d 447 [108 Cal.Rptr. 66]; *People* v. *Gonsoulin,* 19 Cal.App.3d 270 [96 Cal.Rptr. 548]; and *People* v. *Lingo,* 3 Cal.App.3d 661 [83 Cal.Rptr. 755], to support his first contention. None of these three cases is in point. In *Grace,* an officer stopped defendant's car because he thought one of his brake lights was inoperative. Immediately after stopping Grace, the officer discovered that the brake light in fact did work. The initial detention was therefore improper. Nonetheless, the officer continued to detain Grace while he conducted a test of Grace's headlights, found them defective, then engaged Grace in conversation and eventually obtained consent to search his person. All of this was done although the officer had not seen Grace do anything illegal or even suspicious.

In *Gonsoulin,* a car with out-of-state license plates was stopped because the rear license was smudged. Again this was not a violation of law. After the ownership of the car was established and the driver identified, Gonsoulin was required to drive to a service station some seven miles away to investigate ownership of a credit card under conditions which the court found amounted to an arrest and submission to authority.

In *Lingo,* when a car was stopped for an equipment violation, an officer observed a phonograph and a portable radio in the vehicle. The officer suspected that these objects might have been illegally obtained, but instead of asking about the radio or phonograph the officer asked for permission to search for narcotics. The court stated that an inquiry about the radio and phonograph would probably have been lawful, but that the inquiry about narcotics was unjustified since nothing the officers had seen or heard could have reasonably led them to suspect the presence of narcotics.

In the instant case, defendant does not challenge the fact that his license plate was not illuminated or claim that the initial detention was unlawful. The officer's suspicions that defendant may have been impersonating an officer were reasonably aroused by defendant's peculiar response to a routine request to see his driver's license and were further heightened by defendant's lack of knowledge about the police reserve. It was not unreasonable for the officer to believe that an individual who claimed some form of police officer status and who had himself photographed in a police uniform would also have in his possession a gun—one of the primary tools of the police officer's trade. The officer was not obliged to cease his inquiry merely because defendant denied the presence of a weapon. Otherwise most criminal investigations would stop almost before they begin.

The officer's investigation focused on this one particular area. It was not a fishing expedition. It proceeded expeditiously and without undue delay. There was no excessive display of force. If defendant's testimony that he had forgotten about the gun is true, he would not have felt threatened by a request to search. The trial court did not abuse its discretion in finding that there had been a voluntary consent.

Nor was the search excessive in scope. The officer specifically requested permission to look inside the trunk and the briefcase and received permission before doing so.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied September 8, 1977, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied October 6, 1977.