[Crim. No. 33909. Second Dist., Div. Five. Sept. 24, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
FAUSTINO TORRES RICO et al., Defendants and Appellants.

## Counsel

Michael J. Udovic, under appointment by the Court of Appeal, Bernard Meyerson and Joseph H. Lax for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**STEPHENS, Acting P. J.**—Appellants were each charged in a six-count information with attempted murder in violation of Penal Code sections 664 and 187; assault with intent to commit murder in violation of Penal Code section 217; and assault with a deadly weapon in violation of Penal Code section 245, subdivision (a). Appellants pleaded not guilty to all counts and their motion to sever was granted.

Appellants' motions to suppress evidence under Penal Code section 1538.5 and set aside the information under Penal Code section 995 were denied. Codefendant Rico's "Hitch Motion" for negligent destruction of evidence was denied without prejudice to renew. Appellants thereafter withdrew their pleas and pleaded nolo contendere to the charge of assault with a deadly weapon pursuant to a negotiated settlement. Appellants were denied probation and committed to the California Youth Authority.

We find that appellant's contentions that the trial court committed reversible error by denying the motion to suppress and Hitch motion are without merit.

### Statement of Facts

At approximately 12:50 a.m. on May 27, 1978, while conducting a routine patrol, Officer Hanson heard the sound of gunshots whereupon he continued driving his marked police car west on Harvard Boulevard to investigate. At the intersection of Tenth and Harvard, he noted some activity at the Marquez Bakery and a man running towards the police car. Officer Hanson pulled into an adjacent service station south of the Bakery. Although, very excited and speaking broken English, the officer was able to determine from this man's gesticulations that a shooting had just occurred and the suspects had gotten on the westbound freeway. Officer Hanson immediately put out a radio broadcast requesting back-up from a nearby unit and advised them he was entering the freeway in pursuit of the suspects. He asked the back-up unit to transmit a description of the suspect vehicle.

While driving in the fast lane at 80 miles per hour, Officer Hanson received a communication from Officer Gonzalez at the back-up unit advising him that the "suspect vehicle was light brown and possibly a Chevrolet." There were two vehicles on the freeway, one about two miles ahead and one within one mile. At this point Officer Hanson observed a black-over-gold Cadillac driving within the speed limit. He dropped back and radioed Officer Gonzalez, asking if the car could be black-over-gold. Failing to receive a response, postulating that a gold car might be mistaken for brown at night and feeling that the age and sex of the occupants would be relevant in determining whether this might indeed be the suspect vehicle, Officer Hanson pulled up beside the Cadillac and spotlighted the car.

Unable to observe the occupants, Officer Hanson again dropped back and followed the suspect vehicle for approximately five minutes when the

vehicle pulled over onto the shoulder of the freeway. No attempt had been made to stop the suspect vehicle and Officer Hanson at no time turned on his flashing red lights.[1] Officer Hanson pulled in behind the Cadillac, stopping five or six car lengths behind and again turned on his spotlights.

The driver, Rico, looked out the window whereupon Officer Hanson motioned him towards the unit. He then ordered the passenger, Torres, back to the unit.

The facts are unclear, but it appears that Officer Hanson met the two suspects at the front fender of the police car and either had them put their hands on the fender or told them to remain where they were, keeping their hands where he could see them. No pat-down was conducted at this time.

Before looking into the window of the Cadillac and while still approaching it, Officer Hanson received confirmation over his walkie-talkie from the bilingual officer at the scene of the crime, that the suspect vehicle was a black-over-gold Cadillac,with two male Mexican occupants and a .22 automatic rifle. Officer Hanson then looked into the Cadillac and observed a box of .22 ammunition, cigarettes, expended shell casings and a rifle butt, sticking out from under the driver's seat.

Officer Hanson then radioed for a back-up unit. When Officer Cook arrived, the suspects were patted down and placed separately in the police cars. Leaving Officer Cook with the suspects, Officer Hanson returned to the Cadillac, removed the rifle and unloaded it. He testified that the chamber smelled of freshly discharged gunpowder. He returned to the police cars and told the suspects they were under arrest.

### The Trial Judge Was Correct in Ruling
### That the Initial Spotlighting Was Not
### a Detention

In *People* v. *Bower* (1979) 24 Cal.3d 638, 643 [157 Cal.Rptr. 856, 597 P.2d 115], the Supreme Court defined a detention as encompassing three different situations: Per *Terry* v. *Ohio* (1968) 392 U.S. 1, 16 [20 L.Ed.2d 889, 903, 88 S.Ct. 1868], a detention occurs "whenever a police officer accosts an individual and restrains his freedom to walk away," per

---

[1]We do not have the benefit of the testimony of defendants as to their conclusion; conviction was via a plea.

*People* v. *Moore* (1968) 69 Cal.2d 674, 678, 683 [72 Cal.Rptr. 800, 446 P.2d 800], a detention occurs when there is an assertion of authority such as when a citizen is approached and questioned; per *In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957], a detention occurs if the officer stops an individual because he suspects that the individual "may be personally involved in some criminal activity." In each of these cases the officer involved, physically approached the defendants and with an unequivocal show of authority interrogated them. Such overt action is totally lacking in the facts of this case at this point in time.

■ In the instant case, the officer was merely cruising along the freeway making general observations in the hope of spotting suspicious activity. His testimony revealed that at this point in time he himself did not feel there was probable cause to stop the vehicle in question and he only used his spotlight to get a better look at the occupants. This momentary use of the spotlight and the notable absence of any additional overt action is in obvious contrast to the activities of the police in the three aforementioned cases and is therefore insufficient to be categorized as a detention under the criteria of *People* v. *Bower.*

*As in People* v. *King* (1977) 72 Cal.App.3d 346, 350 [139 Cal.Rptr. 926], we are unpersuaded that appellant's reaction, if he was reacting to the spotlight, possibly motivated by guilt, is sufficient to establish an unlawful detention. The conduct of Officer Hanson in momentarily shining his spotlight into the suspect vehicle, in the absence of flashing lights, sirens or a directive over the loudspeaker was ambiguous. In view of the short duration of the spotlighting and the fact that Officer Hanson immediately pulled back without any show of authority, several inferences were possible. The officer could have just as easily shone his spotlight on the appellants in error, or to see if assistance was needed or to investigate a recent crime. This one action would not make every motorist feel compelled to pull over. ■ Therefore, "where two or more inferences can reasonably be drawn from the facts, we may not substitute our deductions for those of the trial court. This latter rule is 'expressly made applicable to decisions of a trial court resolving Fourth Amendment issues.' [Citation.]" (*Id.*)

> *Ordering Appellants to Alight From Their*
> *Vehicle and Remain in Front of the Patrol*
> *Car Constituted a Reasonable Detention*

■ While the appellant's initial stop did not constitute a detention, the officer's subsequent ordering the appellants to alight from their

vehicle and remain by the patrol car constituted a detention under all three definitions set forth in *People* v. *Bower, supra,* 24 Cal.3d 638. Having just received a radio communication confirming that the victim had been shot and therefore suspicious that the appellants may have been the assailants and might have weapons in their car, Officer Hanson ordered them over to his vehicle as a precautionary measure. After explaining his actions, he then ordered the appellants to remain by the patrol car keeping their hands in view. We thus have an unequivocal assertion of authority, whereby the appellants were not free to walk away because the officer believed that they may have been involved in a crime.

■ In California, the general rule is that ". . . circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. If the circumstances warrant it, he may in self-protection request a suspect to alight from an automobile or to submit to a superficial search for concealed weapons." (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) *People* v. *Bower* does not negate this general rule, but confines such actions to when the officer acting as a reasonable man under the circumstances feels "such a course was necessary to the proper discharge of the officer's duties." (*People* v. *Moore* (1968) 69 Cal.2d 674, 682-683 [72 Cal.Rptr. 800, 446 P.2d 800].)

■ In the instant case, an unprovoked shooting had occurred just moments before. It was late at night on a relatively deserted freeway. A witness, presumptively reliable, had indicated that the assailants had gotten on the freeway. (*People* v. *Hill* (1974) 12 Cal.3d 731, 761 [117 Cal.Rptr. 393, 528 P.2d 1].) Radio communication regarding the description of the suspect vehicle was not definitive. The situation was tense and dynamic, when the vehicle pulled over. The officer's actions in pulling behind the car were objectively reasonable and "[i]n fact, to have neglected to investigate would have constituted a failure to properly discharge his duties as an officer of the law." (*People* v. *Flores* (1974) 12 Cal.3d 85, 91-92 [115 Cal.Rptr. 225, 524 P.2d 353].)

"It is also firmly established that in carrying out an investigation of crime police may take reasonable steps to protect themselves from violence." (*People* v. *Turner* (1969) 2 Cal.App.3d 632, 635 [82 Cal.Rptr. 763].) Officer Hanson was justifiably prudent in choosing not to approach the suspect vehicle himself. There were no back-up officers present to provide protection and it still had not been determined whether the occupants were in distress, merely curious or the fleeing suspects. Having

the appellants approach the patrol car afforded the officer an opportunity to assess the situation without exposing himself to unnecessary danger.

Officer Hanson's suspicions were sufficiently aroused at this point for him to detain the appellants further while he walked over to their car. ■ "To legally detain an individual because of 'suspicious circumstances,' the prosecution must establish on the record that at the moment of the detention, there were specific and articulable facts, which reasonably caused the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or about to occur; (2) the activity was related to a crime; and (3) the individual under suspicion was connected to the activity." (*People* v. *Bower, supra,* at p. 644.) ■ That the first two requirements have been satisfied is obvious. A crime had taken place and the suspects were fleeing the scene. The third requirement is a little more difficult. Officer Hanson did testify that he felt the appellants could be connected with the crime because they were the closest vehicle on the freeway and that a black-over-gold car could easily be mistaken for light brown at night. The record is silent as to the reasons that the appellants may have given for stopping and so we are unable to determine whether this provided additional reasons for the continuation of the detention.

Furthermore, we do not agree with the appellants' contention that the discrepancy between the description and the vehicle vitiated reasonable cause to detain them. Witnesses and "[c]rime victims often have limited opportunity for observation, their reports may be hurried, perhaps garbled by fright or shock. More garbling may occur as the information is relayed to the police broadcaster and from broadcaster to the field. It is enough if there is adequate conformity between description and fact to indicate to *reasonable* officers that detention and questioning are necessary to the proper discharge of their duties." (*People* v. *Smith* (1970) 4 Cal.App.3d 41, 48 [84 Cal.Rptr. 229].) We feel that the detention was reasonable for the reasons articulated by Officer Hanson and additionally point out that both a Chevrolet and a Cadillac are large cars and General Motors' products and one might be mistaken for the other.

■ Granting the right to detain, ". . . the officer had a corresponding right for his own safety to make, . . ., a minimally intrusive patdown search." (*People* v. *Superior Court (Backey)* (1978) 85 Cal.App.3d 1020, 1026 [149 Cal.Rptr. 349].) Thus the officer's conduct must be countenanced because it was reasonable and less intrusive and offensive that a pat-down would have been.

### ■ Looking Into the Suspect Vehicle With the Aid of the Spotlight Was Not a Search

" 'Looking through the window of an automobile is not unlawful. Observation of that which is in view is lawful, whether the illumination is daylight, moonlight, lights within the vehicle, lights from streetlamps, neon signs or lamps, or the flash of lights from adjacent vehicles. . . .' " (Citation omitted.) *People* v. *Rios* (1975) 51 Cal.App.3d 1008, 1012 [124 Cal.Rptr. 737].) Furthermore the California Supreme Court as well as this division have held that the use of a flashlight to look into a vehicle is of no constitutional significance and does not constitute a search if the officer is standing where he has a right to be and does not open any doors or enter the automobile. (*People* v. *Hill, supra,* 12 Cal.3d 731, 748; *People* v. *Bright* (1970) 4 Cal.App.3d 926, 930 [84 Cal.Rptr. 691].)

Thus, the logical conclusion is that whether the spotlight was being used to illuminate the general area or to light the interior of the vehicle to facilitate observation is of no moment. Officer Hanson had every right to peer into the vehicle. His observation of the rifle butt sticking out in plain view from under the seat would not have constituted an illegal search even in the absence of the updated broadcast description he received while approaching the Cadillac.

### The Police Broadcast or the Observation of the Rifle Were Each Sufficient in Themselves to Constitute Probable Cause to Arrest

■ The facts of this case depict "the genesis of reasonable cause for temporary detention and interrogation, followed by disclosure of new facts culminating in a totality of information constituting probable cause for a warrantless arrest . . . ." (*People* v. *Smith, supra,* 4 Cal.App.3d 41, 48.) Having established the reasonability of the initial detention, the detailed broadcast description or the observation of the rifle and casings were each in themselves sufficient to constitute probable cause for arrest. Taken together, they left no doubt that the appellants should be arrested. The radio confirmation particularly described the color, make and occupants of the suspect vehicle and indicated that a rifle had been used in the commission of the crime. The officer's observation of the rifle and casings further confirmed the details of the description, leaving no alternative but to arrest the suspects.

■ *The Hitch Motion Was Properly Denied. The*
*Failure to Preserve the Possible Fingerprint*
*Evidence on the Rifle Was Not Error.*

". . . [T]he *Hitch* rule exists to guarantee a defendant a fair trial through the preservation of evidence and not to punish police conduct." (*People* v. *Swearingen* (1978) 84 Cal.App.3d 570, 574 [148 Cal.Rptr. 755].)

The sanctions to be applied by the court ". . . depend upon the particular circumstances attending such loss or destruction." (*People* v. *Hitch* (1974) 12 Cal.3d 641, 650 [117 Cal.Rptr. 9, 527 P.2d 361].) The *Hitch* case was one of first impression involving the intentional but nonmalicious destruction of evidence. The court was careful to point out that ". . . the imposition and mode of sanctions depend upon the particular circumstances attending such loss or destruction." (*Id.*, at p. 650.) The court further stated that in future cases ". . . due process shall not require a dismissal of the action. . . ." (*Id.*, at p. 653.) The courts therefore have generally applied the sanction of exclusion rather than dismissal in those cases where police negligently fail to preserve evidence because where a ". . . defendant only claimed negligence, dismissal was far too drastic a remedy." (*People* v. *Taylor* (1977) 67 Cal.App.3d 403, 410, fn. 4 [136 Cal.Rptr. 640].)

The officer's conduct which did not include any attempt to preserve latent fingerprints on the rifle was reasonable under the circumstances. There were only two policemen present and there were two dangerous arrestees. Officer Hanson chose to seize the rifle immediately and render it harmless as a safety precaution rather than leave it in an unattended vehicle on a public highway.

Secondly, the location or total absence of appellant's fingerprints on the rifle would not have necessarily provided favorable evidence as to the issue of guilt or innocence. In view of the other cumulatively overwhelming evidence available, (proximity to the scene of the crime, the matching description, comparison of shell casings to the bullet found at the scene of the shooting, and identification by eyewitnesses) as well as the fact that the remedy would be suppression rather than dismissal, failure to grant the motion, even if error, was harmless beyond any doubt.

Therefore ". . . it cannot be said that the failure of the police to preserve or photograph appellant's latent fingerprints in place or to

preserve the object on which they were found deprived appellant of material evidence and impinged upon his right of due process." (*People v. Vera* (1976) 62 Cal.App.3d 293, 300-301 [132 Cal.Rptr. 817].)

The convictions are affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied October 16, 1979, and on October 17, 1979, the opinion was modified to read as printed above. The petition of appellant Rico for a hearing by the Supreme Court was denied November 21, 1979.