BERNSTEIN, P. J., Dissenting.
I dissent. I would hold that appellant’s conviction must be reversed, inasmuch as the People’s evidence was obtained by means of an unlawful search of appellant’s vehicle. In my opinion, the search was unlawful for want of probable cause. Further, I disagree with the majority’s analysis of the holdings in People v. Kern (1979) 93 Cal.App.3d 779 [155 Cal.Rptr. 877], and People v. Greer (1980) 110 Cal.App.3d 235 [167 Cal.Rptr. 762]. Finally, I am compelled to disavow what I believe to be the unconstitutional construction my colleagues give Penal Code section 12031, subdivision (e).[1]
The instant case turns upon the usual Fourth Amendment considerations involving lawful searches and seizures. Under the traditional rules of criminal procedure, police officers may lawfully (assuming proper scope is not exceeded) search for evidence under any of the following circumstances:
1. Search Incident to Lawful Arrest: (Chimel v. California (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]; New York v. Belton (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860]; People *Supp. 14 v. Brisendine (1975) 13 Cal.3d 528, 539 [119 Cal.Rptr. 315, 531 P.2d 1099]; Miller v. Superior Court (1981) 127 Cal.App.3d 494, 503-511 [179 Cal.Rptr. 783].
2. Search Based Upon Probable Cause {and, if warrantless, upon exigent circumstances): Chambers v. Maroney (1970) 399 U.S. 42, 47-52 [26 L.Ed.2d 419, 426-429, 90 S.Ct. 1975]; People v. Johnson (1981) 30 Cal.3d 444, 450-451 [179 Cal.Rptr. 209, 637 P.2d 676]; Wimberly v. Superior Court (1976) 16 Cal.3d 557, 566, footnote 5 [128 Cal.Rptr. 641, 547 P.2d 417].
3. Plain View Seizure Without Preliminary Search: Coolidge v. New Hampshire (1971) 403 U.S. 443, 464-472 [29 L.Ed.2d 564, 581-586, 91 S.Ct. 2022]; People v. Hill (1974) 12 Cal.3d 731, 746 [117 Cal.Rptr. 393, 528 P.2d 1] (overruled on other grounds by People v. DeVaughn (1977) 18 Cal.3d 889, 896, fn. 5 [135 Cal.Rptr. 786, 558 P.2d 872]; Guidi v. Superior Court (1973) 10 Cal.3d 1, 10-18 [109 Cal.Rptr. 684, 513 P.2d 908]; People v. Curley (1970) 12 Cal.App.3d 732, 747-748 [90 Cal.Rptr. 783].)
4. Search Incident to a Valid Detention: Terry v. Ohio (1968) 392 U.S. 1, 25-26 [20 L.Ed.2d 889, 908, 88 S.Ct. 1868]; People v. Collins (1970) 1 Cal.3d 658, 661-663 [83 Cal.Rptr. 179, 463 P.2d 403]; People v. Mickelson (1963) 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]; In re Richard C. (1979) 89 Cal.App.3d 477, 488 [152 Cal.Rptr. 787]; People v. Huff (1978) 83 Cal.App.3d 549, 558 [147 Cal.Rptr. 316].
5. Search Based on Effective Consent: People v. James (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135]; People v. Szabo (1980) 107 Cal.App.3d 419, 430-431 [165 Cal.Rptr. 719]; People v. Jones (1977) 72 Cal.App.3d 624, 627-628 [140 Cal.Rptr. 236].
Heretofore, these five alternatives have represented the only lawful means through which police officers could search for criminal evidence. The majority in the instant case now offers a sixth alternative upon which to base a “lawful” search: Section 12031, subdivision (e). I am unable to agree with my colleagues that this statute is of such profound constitutional import.
The principal analytical error to which the majority fall victim is their failure to distinguish an inspection of a lawfully seized firearm *Supp. 15 from the search (if one occurred) which produced the weapon. The court in People v. DeLong (1970) 11 Cal.App.3d 786 [90 Cal.Rptr. 193], in purporting to rule on the “constitutionality” of subdivision (e)[2] had this distinction clearly in mind: “We hold that the examination permitted by Penal Code section 171e and section 12031, subdivision (c) is constitutional and does not violate the Fourth Amendment. In the first place, the examination of the weapon may hardly be deemed to be a search at all. The chamber of a gun is not the proper or usual receptacle for anything but a bullet or a shell. The loading of a gun simply affects the condition of the weapon by making it immediately useful for firing. The ammunition becomes, as it were, part of the gun. There is nothing private or special or secret about a bullet. The use of the word ‘examine’ in the statutes instead of the word ‘search’ is not at all a devious one. In examining the weapon, the officers are not attempting to find some kind of contraband which is unrelated to the gun itself.” (11 Cal.App.3d at pp. 791-792 [italics added].) The DeLong court summed up the import of its decision accordingly: “[W]e hold that the mere examination of a weapon which is brought into a place where it is forbidden to have a loaded weapon, is not unreasonable and that the statutes authorizing such examination are constitutional” (11 Cal.App.3d at pp. 792-793).
As to the basis in law for the search of the trunk of DeLong’s automobile, the court is not nearly as articulate; “. .. if the statutes which are to be discussed are valid, their objectives may not be frustrated simply by depositing firearms which have been exposed to view or which are otherwise known to the officers to be present in such part of the vehicle or in such container as obscures them from view.” (11 Cal.App.3d at p. 791.) It is, or should be, apparent that a police officer’s entry into a locked automobile trunk is a “search” within the meaning of the Constitution regardless of what the officer believes he will find. (See People v. Hill (1974) 12 Cal.3d 731, 748 [117 Cal.Rptr. 393, 528 P.2d 1]—an officer’s observation of marijuana in the interior portion of a vehicle is not a search if the officer makes such observation from a vantage point outside of the vehicle; however, subsequent entry into the vehicle for the purpose of seizing the contraband held to constitute a search; see, also, People v. Gale (1973) 9 Cal.3d 788, 794-795 [108 Cal.Rptr. 852, 511 P.2d 1204]: “[T]he dispositive question in this proceeding is whether *Supp. 16 Officer Aumond’s initial entry into the Pontiac and the Porsche was lawful. His observation while outside each vehicle—whether of the exterior or the portion of the interior visible from that vantage point—was not a ‘search’ in the constitutional sense. [Citation.] But his ensuing entry into each car was, under numerous cases, a search within the meaning of the Fourth Amendment to the United States Constitution and article I, section 19 of the California Constitution. [Citation.]”
Searches, of course, may be perfectly legal, even in the absence of a warrant. For a warrantless search of an automobile to be legal, the foundational requirement is probable cause to believe that “the contents of the automobile offend against the law” (Carroll v. United States (1925) 267 U.S. 132, 159 [69 L.Ed. 543, 554). Under the Carroll doctrine (better known as the “automobile exception” to the warrant requirement), probable cause such as will support a warrantless search of a vehicle exists whenever an officer is aware of “specific articulable facts which give reasonable cause to believe that seizable items are contained in the vehicle at the time of the search” (People v. Weston (1981) 114 Cal.App.3d 764, 774 [170 Cal.Rptr. 856]). (Italics added.) “Seizable items” consist of either contraband or (other) evidence of a crime. (People v. Laursen (1972) 8 Cal.3d 192, 201 [104 Cal.Rptr. 425, 501 P.2d 1145]; People v. Odom (1980) 108 Cal.App.3d 100, 109 [166 Cal.Rptr. 283].)
A firearm being carried in a vehicle is evidence of a crime if either (a) it is loaded and the carrier is not a person exempted from the operation of section 12031, subdivision (a); or (b) the seizing officer reasonably believes, as a result of specific facts known to him at the time of the seizure, that the weapon to be seized is linked to a particular crime. (See People v. Hill, supra, 12 Cal.3d at pp. 762-764. Cf. People v. Marceaux (1970) 3 Cal.App.3d 613, 616-617 [83 Cal.Rptr. 798] [officers could properly seize rifle from defendant’s car when they had reason to believe that the rifle had been used in an assault some time earlier].)
Under these settled principles of search and seizure law, it is apparent that a weapon not known to be loaded or to have been involved in the commission of a particular crime can only be considered “contraband”[3] subject to seizure if the weapon’s mere existence gives rise to *Supp. 17 probable cause to believe that the weapon is loaded (i.e., is evidence of a violation of § 12031). It appears that each published Court of Appeal decision to directly address this question in the context here significant has answered it in the negative. People v. Kern, supra, 93 Cal.App.3d at pages 782-783; People v. DeLong, supra, 11 Cal.App.3d at pages 790-791; People v. Muniz (1970) 4 Cal.App.3d 562, 567 [84 Cal.Rptr. 501] (wherein Justice Kaus writes that “Farey [a police officer] obviously did not have probable cause to believe that the firearm was loaded” upon observing it on the floor of a vehicle pulled over for a mechanical violation).
An interesting anomaly occurs by reason of the DeLong court’s holding in this regard. Although the only lawful means by which the officers could conduct a nonconsensual search of DeLong’s car trunk would require probable cause to believe that the weapons in the trunk were loaded (or were otherwise evidence of a crime), the court takes great pains to emphasize that no such probable cause existed: “The argument is that probable cause to believe that the guns [in the trunk] were loaded appears from the fact that appellant made two false statements to the officer and the officer knew them to be false. The first was appellant’s denial that there were guns in the car, and the second, his saying that he had no key to the car. This gave rise to a reasonable belief, says respondent, that the guns were loaded or were stolen or were the instrumentalities of some crime.
“We do not agree with this reasoning. The officers knew of no particular crime in which the guns might have been used, and they did not have probable cause for believing them to have been stolen merely from the fact that some exchange of articles, perhaps for money, had been made. Besides, the deputy sheriff testified that the purpose of opening the trunk was to see if the guns which were there were loaded weapons. Nor does the false statement that there were no guns in the car, as made by appellant, supply sufficient probable cause, apart from the statutes which are to be discussed under the next heading, to believe that the guns were loaded. Appellant’s denial of the presence of the guns and also his dropping of the key, although they were evasive actions, would not, we believe, justify opening of the trunk in the absence of these statutes. [Pen. Code, §§ 171e and 12031, subd. (c), now designated subd. (e).]” (11 Cal.App.3d at p. 790.) (Italics added.) Thus, in its apparent zeal to pass upon the “constitutionality” of the statutes, the DeLong court ironically gave them an arguably unconstitutional con *Supp. 18 struction.[4] Furthermore, the court in DeLong, in holding the inspection authorization portion of section 12031 to be “constitutional,” engaged in an entirely unnecessary and superfluous exercise. Before DeLong, indeed, before section 12031, subdivision (e), the law of search and seizure in California permitted inspections of lawfully seized items, be they loaded weapons or otherwise. Eleven years prior to the passage of section 12031 our Supreme Court validated this course of action by police officers: “The radio was in plain sight, and it fitted the general description of property known by the officers to be stolen. Under the circumstances, there appears to be no reason in law or common sense why one of the officers could not pick up [seize] the radio and examine [inspect] it for the purpose of dispelling or confirming his suspicions.” (People v. Roberts (1956) 47 Cal.2d 374, 380 [303 P.2d 721].) Roberts makes it clear that no innovation of constitutional significance is embodied in section 12031, subdivision (e). In fact, subdivision (e) could have been omitted entirely without affecting the enforcement of the statute in any material way. The power to inspect a lawfully seized item predates both DeLong and section 12031. The only new wrinkle in subdivision (e) is the passage dealing with “refusal” to permit inspection, the significance of which I will address infra.
The courts of this state have never questioned the right of a police officer engaged in a lawful investigation or search to take reasonable measures for self protection, including, if necessary, the frisking and disarming of a detainee for whom no probable cause to arrest exists. (People v. Turner (1969) 2 Cal.App.3d 632, 635-637 [82 Cal.Rptr. 763]; People v. Lumar (1968) 267 Cal.App.2d 900, 904-905 [73 Cal.Rptr. 682]; People v. Dumas (1967) 251 Cal.App.2d 613, 617 [59 Cal.Rptr. 541].) It is scarcely likely that a pre-DeLong or presection 12031, subdivision (e) police officer who lawfully seized a firearm would thereafter find himself faced with the need to procure a warrant before he could legally examine the weapon to see if it was loaded. Such examination was permitted before the carrying of a loaded weapon in certain *Supp. 19 areas was even a crime (People v. Murphy (1959) 173 Cal.App.2d 367, 377-378 [343 P.2d 273]).

Search Versus Inspection

The issue in the instant case, as well as in DeLong, in Kern and in Greer, is not the propriety, or “constitutionality” of the inspection of the firearms seized in those cases. The issue is instead the legality of the search which, in each of the four cases, preceded that inspection. If the searches were unlawful, the seizure (and examination) of the weapons was likewise unlawful: “Of course, a seizure of evidence discovered in the course of a search without a warrant is presumptively invalid— because the prior search is presumptively invalid.”[5] (Guidi v. Superior Court, supra, 10 Cal.3d at p. 15, fn. 15.) (Italics in original omitted.)
DeLong and Kern involved searches of automobile trunks. Greer involved the search of a duffle bag located in the passenger compartment of a lawfully detained vehicle. The instant matter involves the “search” of the passenger compartment of an unoccupied vehicle. All of the searches were conducted without a warrant. I understand the majority’s position to be that each of these searches are authorized by statute; specifically, section 12031, subdivision (e). Section 12031, subdivision (e) provides as follows: “In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on his person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section.” My colleagues insist that this section, in “authorizing” police officers to inspect weapons which they encounter in public places, permits officers to conduct any manner of search, reasonable or unreasonable, with or without probable cause (as that term has heretofore been defined), to facilitate the enforcement of the section. Though I find this proposition startling, at least two courts (DeLong and Greer), impliedly at least, lend support to this “interpretation” of section 12031, subdivision (e). Fortunately, there exists better-reasoned authority to the contrary (Kern; People v. Green (1981) 115 Cal.App.3d 259, 263 [171 Cal.Rptr. 210]; People v. Green (1971) 15 Cal.App.3d 766, 771-772 [93 Cal.Rptr. 433]).
*Supp. 20 In my view, section 12031 merely defines a crime, i.e., the carrying of a loaded firearm in areas where unauthorized persons are prohibited from so doing. I do not believe that this statute modifies in any way the commands of the Fourth Amendment or of article I, section 13 of the California Constitution. Thus, I offer a more “traditional” search and seizure analysis than that of the majority. Under this analysis, any valid nonconsensual search will require, at the threshold, the existence of probable cause to.search. A further requirement, also traditional in nature, demands that the probable cause to search must exist at the time the search is undertaken.

The Loaded Firearm Was Not the Product of a Plain View Seizure

The People correctly contend that Officer Kreins did not “search” appellant’s automobile by merely looking in the window. A police officer’s observations, if made from a place where the officer has a right to be, do not in themselves constitute a “search” (People v. Hill, supra 12 Cal.3d at p. 748; North v. Superior Court (1972) 8 Cal.3d 301, 306 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; People v. Rico (1979) 97 Cal.App.3d 124, 133 [158 Cal.Rptr. 573]). Of course, appellant herein did not seek to suppress the officer’s observations from outside of appellant’s car; these were of no evidentiary significance. Rather, it was the officer’s subsequent observations (wherein he determined that the gun inside of the car was loaded), made from inside the vehicle, that appellant sought to suppress in the trial court.
Numerous authorities hold that a police officer’s entry into a vehicle is, in the constitutional sense, a search of that vehicle. (People v. Gale, supra, 9 Cal.3d at pp. 794-795; People v. Rico, supra, 97 Cal.App.3d at p. 133 [the Rico court observed that “the use of a flashlight to look into a vehicle is of no constitutional significance and does not constitute a search if the officer is standing where he has a right to be and does not open any doors or enter the automobile.” (italics added)].)
Thus, it cannot be maintained that the evidence against appellant was not procured through a search, but was seized while in “plain view.” The weapon was not in “plain view” from outside of the car, i.e., it was not “readily visible and accessible” (People v. Roberts, supra, 47 Cal.2d at p. 379; Bielicki v. Superior Court (1962) 57 Cal.2d 602, 607 [21 Cal.Rptr. 552, 371 P.2d 288]), nor was it “‘fully disclosed and open to the eye and hand’” (People v. Marshall (1968) 69 Cal.2d 51, 58 [69 Cal.Rptr. 585, 442 P.2d 665]) (overruled on other grounds in People v. *Supp. 21 Cook (1975) 13 Cal.3d 663, 668-669, fn. 4 [119 Cal.Rptr. 500, 532 P.2d 148]). Because the officer’s entry into the automobile was a search, the validity of the subsequent seizure of the weapon turns upon the lawfulness of that search (Guidi v. Superior Court, supra, 10 Cal.3d at p. 15, fn. 15).

The Search of the Vehicle Was Unlawful

The search in the instant case was unconsented to by appellant.[6] It was not incident to appellant’s arrest (which occurred at a later time at a different location). In order to sustain the search, there would have to exist either probable cause to believe that “seizable” items were in appellant’s vehicle (Chambers v. Maroney, supra, 399 U.S. at p. 48 [26 L.Ed.2d at pp. 426-427]), or reasonable cause to detain appellant and ascertain thereby if appellant was armed (In re Richard C., supra, 89 Cal.App.3d at pp. 488-489).

No Probable Cause to Search Was Occasioned by the Officer’s Observations From Outside Appellant’s Car

Possession of a firearm is not unlawful per se. Before such possession constitutes a crime, certain additional facts must be present (i.e., that the possessor had been convicted of a felony (§ 12021); that the weapon was concealed and its possessor lacked a license to carry a concealed weapon (§ 12025); or that the weapon was loaded and was being carried in a prohibited area by a person without a license permitting such activity (§ 12031)). Therefore, it follows that a firearm such as that carried by appellant does not, in the absence of other known facts, constitute “contraband” as that term is defined by the California Supreme Court: “The term ‘contraband’ is one of common legal usage but imprecise legal meaning. Black’s Law Dictionary defines it as: ‘Against law or treaty; prohibited.’ (4th ed. (1957) at p. 393.) The term has been consciously defined in isolated cases as meaning property which is unlawfully possessed. (See United States v. Old Dominion Warehouse, Inc. (2d Cir. 1926) 10 F.2d 736, 738; State v. Butler (1929) 148 S.C. 495 [146 S.E. 418, 419].) Most cases merely use the term without defining it; this tacitly tautological usage is reflected in the Supreme Court’s declaration that ‘contraband is indeed property in which the Government holds a superior [property] interest, but only because the Government decides to vest such an interest in itself. And while there *Supp. 22 may be limits to what may be declared contraband, the concept is hardly more than a form through which the Government seeks to prevent and deter crime.’ (Warden v. Hayden, supra, 387 U.S. at p. 306, fn. 11 [18 L.Ed.2d at p. 792]; cf. Aday v. Superior Court (1961) 55 Cal.2d 789, 800 [13 Cal.Rptr. 415, 362 P.2d 47].)
“Proper usage would appear to convey the sense of property which can only be unlawfully possessed, as opposed to stolen property, which can be -lawfully possessed by its rightful owner. The distinction between stolen property and contraband is particularly important in regard to plain view seizures. Generally contraband items bear indicia of unlawfulness on their face, while only knowledge of the unique characteristics of a particular chattel or of the circumstances surrounding its possession can establish that any given item of property has been stolen from another. Stolen property, unlike true contraband, does not advertise its own unlawfulness. As may be seen in our examination of the Roberts and Gilbert cases, positive identification of stolen property, as opposed to contraband, generally requires preliminary inspection of the item thought to have been stolen in order to establish, by going beyond the limits of what is ‘in plain sight,’ whether or not the item is in fact stolen. Even though such ‘inspections’ or ‘examinations’ take place within a residence without benefit or warrants, they have not been invalidated as ‘per se’ unreasonable warrantless searches. This result has apparently been reached by treating the examination as an incident of the power to effect a plain view seizure even of a merely suspicious item, i.e., an item which an officer has probable cause to believe has been stolen, but which he must in fact ‘search’ in order to confirm is stolen. This rationale is consistent with the legal posture of plain view seizures and searches of items thus seized. Such seizures and searches incident thereto do not fall under the warrant procedure, and hence are governed by the objective standard of reasonableness, rather than probable cause to believe an offense has been or is being committed.” (Guidi v. Superior Court, supra, 10 Cal.3d at p. 12, fn. 10, italics added.) Officer Kreins, before undertaking the search of the car, possessed no “knowledge of the unique characteristics” of the weapon or of the “circumstances surrounding its possession” (to wit: It was loaded, and therefore constituted evidence of a crime, assuming the owner was unlicensed).
Because the pistol did not “advertise its own unlawfulness” to persons outside of appellant’s car (in contrast to, for example, illegal drugs or outlawed weaponry such as brass knuckles), probable cause to search the car was not supplied by Krein’s observations. Therefore, the numer *Supp. 23 ous cases which hold that an officer’s observations of contraband within a vehicle furnishes probable cause to search that vehicle (Wimberly v. Superior Court, supra, 16 Cal.3d at pp. 564-565; People v. Superior Court (Kiefer) (1970) 3 Cal.3d 807, 816-817 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; People v. Terry (1969) 70 Cal.2d 410, 428 [77 Cal.Rptr. 460, 454 P.2d 36]), or the passenger compartment of the vehicle, at least, are inapposite to the facts of the instant case.[7]
Thus, Officer Kreins conducted a search at a time when he had no probable cause to do so. “It is well established that the later discovery of facts which, if known to the officers at the time, would have justified a search, does not validate conduct which was unlawful” (People v. Tellez (1982) 128 Cal.App.3d 876, 880 [180 Cal.Rptr. 579]). It is precisely because DeLong (impliedly) and Greer (explicitly) sanction such retroactive “justification” that I find the holdings and reasoning in those cases to be unacceptable.

The Gun Was Not the Product of a Lawful Detention

It is settled law that a peace officer, even in the absence of probable cause to arrest, may detain an individual whom he reasonably suspects to be involved in criminal activity (In re Tony C. (1978) 21 Cal.3d 888, 892-893 [148 Cal.Rptr. 366, 582 P.2d 957]; In re Michael V. (1974) 10 Cal.3d 676, 681 [111 Cal.Rptr. 681, 517 P.2d 1145]; People v. Mickelson (1963) 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658]). Furthermore, the detaining officer may, if he reasonably believes the person detained is armed, engage in a limited search (usually restricted to a pat-down) to discover and secure the weapon (Terry v. Ohio, supra, 392 U.S. at p. 27] [20 L.Ed.2d at p. 909; People v. Watson (1970) 12 Cal.App.3d 130, 134 [90 Cal.Rptr. 483]).
It is not here necessary to discuss whether the “limited search for weapons” that is authorized as incident to a valid detention might, under appropriate circumstances, encompass the seizure of the weapon from the inside of a car belonging to a person detained in the immediate vicinity.[8] This is because Officer Kreins, unwilling to seek out *Supp. 24 appellant (Kreins had been informed by the parking attendant that appellant was inside the restaurant immediately adjacent to the parked vehicle), conducted his “search incident to detention” without a detainee. Clearly, a detainee is a necessary element of a valid detention, just as an arrestee is necessary before an arrest (and search incident thereto) may be said to have taken place (see People v. Egan (1967) 250 Cal.App.2d 433 [58 Cal.Rptr. 627], where the court invalidated a search “incident to arrest” because, although “[t]he officers had probable cause to arrest Egan ... Egan had not made his appearance. With the stage thus set, the officers sprung the trap with the suspect far away” (250 Cal.App.2d at p. 437)).
Thus, no detention took place in the instant case. The weapon was not, therefore, the product of a search for weapons incident to a valid detention. If, instead, Kreins had refrained from going about his immediate search and had sought out appellant at the nearby location where he knew appellant to be, a valid detention, followed by a lawful arrest for violation of section 12031, subdivision (a), would have been certain to ensue. Such a course of action would not have necessitated Kreins’ permitting appellant to reenter his car (and thereby gain access to the weapon) before initiating an investigative detention.[9]
I am forced to conclude that Officer Kreins’ preliminary search of appellant’s car was unlawful, in that no probable cause (nor exigent circumstances) existed at the time the search was undertaken; nor was a detention then in progress. There is simply no lawful basis upon which the search in the instant case may be upheld. Appellant’s suppression motion pursuant to section 1538.5 should have been granted.

*Supp. 25
A Request Is Not Necessary Before a Firearm May Be Examined Pursuant to Section 12031, Subdivision (e)

“. .. Refusal to allow a peace officer to inspect a firearm pursuant to the provisions of this section constitutes probable cause for arrest for violation of this section.” (§ 12031, subd. (e).)
The majority opinion discusses at length the question of whether the above-quoted subdivision requires that a request to inspect a firearm precede such inspection. According to the majority, appellant’s “sole contention on appeal is that as a legal requirement under subdivision (e) of section 12031 of the Penal Code, Kreins was obligated first to make a request of Zonver to inspect the gun before examining it.” The majority further represent that People v. Kern, supra, 93 Cal.App.3d 779, supports this purported contention of appellant.
In my opinion, appellant does not contend, nor does Kern hold, that a police officer must request to inspect a weapon before he may lawfully do so.
Neither Kern nor appellant suggest anything beyond the unremarkable proposition that a lawful search (not an inspection) must, if unconsented to, be based either upon probable cause or be incident to a valid arrest or detention.
The facts in Kern did not give rise to probable cause to search the vehicle in that case, or to arrest Kern and his companion. In similar fashion, no probable cause existed in the instant case at the moment Officer Kreins undertook the search of appellant’s vehicle.[10] What section 12031, subdivision (e) provides in situations such as these is “probable cause for the asking” (the Legislature presumably thought that any weapon known to the arresting officer to exist would be procurable through a search incident to the arrest occasioned by the suspect’s “refusal” to allow inspection). As such, subdivision (e) is both constitutional and effects the intent of the Legislature that all guns carried in public places should be subject to examination by police officers at all times.
*Supp. 26 That Kern held no more than a request, if made, will serve to supply probable cause where it otherwise does not exist, is amply demonstrated by the court’s consideration of the question of whether, in that case, probable cause had come into being from some other source, given the officers’ failure, in that case, to ask. “A request to inspect a firearm in order to determine if it is loaded is not the only possible basis for a lawful search. A police officer could properly open the trunk if he had independent probable cause to believe that the weapon, which he knew to be inside was loaded. (Cf. People v. DeLong, supra, 11 Cal.App.3d 786, 791.) Where the officer knows only that there is a weapon inside the trunk but has no other information which would lead him to believe the weapon is loaded, as is the case here, the officer does not have probable cause to believe the weapon is loaded. (Cf. People v. DeLong, supra, 11 Cal.App.3d 786, 790-791.)”[11] (People v. Kern, supra, 93 Cal.App.3d at pp. 782-783.)
I would reverse the judgment.

Unless otherwise specified, all code sections refer to the Penal Code.

At the time DeLong was decided, the subdivision here at issue, (e) appeared as subdivision (c) to section 12031. It was redesignated subdivision (e) when section 12031 was amended in 1976 (Stats. 1976, ch. 1425, § 9). The language of the subdivision was not changed.

An excellent discussion of the meaning of the term “contraband” may be found in Guidi v. Superior Court, supra, 10 Cal.3d at page 12, footnote 10. (See p. Supp. 20, infra.)

Of course, DeLong was not passing on the constitutionality of these statutes at all. Such an inquiry would be directed to the constitutional competency of the Legislature to proscribe the carrying of loaded guns in certain designated public areas (cf. People v. Satchell (1971) 6 Cal.3d 28, 41-42 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]). If such proscription is within the constitutional powers of the Legislature (as it undoubtedly is), the method of of enforcement, even if flagrantly illegal, could not cast doubt on the constitutionality of the enactment itself. Rather, each case would turn on its own facts and would be controlled by the search and seizure provisions of the state and federal Constitutions. DeLong merely decided (incorrectly, in my view) that the method of enforcement utilized in that case was “constitutional.”

The presumption of invalidity can, of course, be overcome by the prosecution. (Badillo v. Superior Court (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

The People do not suggest that the parking attendant could consent to the search of appellant’s car; nor is it contended that Officer Kreins held a good-faith belief that the attendant was so authorized.

As already observed, case authority uniformly holds that the “mere presence” of a weapon, without more, does not give rise to probable cause to believe the weapon is loaded (see p. Supp. 5, ante).

Cases which suggest that a weapon inside a vehicle may be seized pursuant to a valid detention include People v. Green, supra, 15 Cal.App.3d at page 772, and an earlier decision of this court, People v. Jones (1975) 52 Cal.App.3d Supp. 12 [125 Cal.Rptr. 172].

Such a procedure could have arguably exposed Kreins to some unnecessary danger. It must be observed, however, that Kreins was clearly not at any time in fear for his own safety. An officer in such fear would not, as Kreins did, replace the weapon, still loaded, and then permit the driver to enter his vehicle and drive off—with Kreins following to effect the eventual stop for the purpose of arresting appellant for violation of section 12031, subdivision (a). Another reasonable inference which may be drawn from these facts is that the officer realized at some point that perhaps he had acted too hastily in executing his impetuous search; he therefore replaced the loaded gun and effected the subsequent stop (at some danger to himself) in order to save the arrest from the suspected illegality of his initial intrusion into appellant’s automobile. Since the officer’s views as to the state of the law are irrelevant, this conjecture is nothing more than mental exercise.

Although the majority’s discussion seems to focus principally upon the second stop of appellant by Kreins (where appellant was arrested), this stop is irrelevant. The critical point in analytical terms was reached the moment Kreins entered appellant’s vehicle while it was parked in front of the restaurant. If the entry was unlawful, nothing Kreins did (or did not do) during his subsequent stop and arrest of appellant could *Supp. 26 have dissipated the taint (Wong Sun v. United States (1963) 371 U.S. 471, 491 [9 L.Ed.2d 441, 457, 83 S.Ct. 407]) and rendered the arrest of appellant lawful. Conversely, if Kreins’ initial search was proper, he had valid probable cause to arrest appellant from the moment he became aware that the gun was loaded. The fact that appellant was only arrested afterwards would not serve to invalidate the prior, lawful search. (See People v. Teresinski (1982) 30 Cal.3d 822 [180 Cal.Rptr. 617, 640 P.2d 753].) Thus, whether Kreins did or did not ask appellant if Kreins could inspect appellant’s gun is irrelevant to the outcome.

I do not, under the facts presented by this case, think that the trunk/passenger compartment distinction is of any significance. Neither case involved a readily accessible firearm that could have been used “to assault an officer or resist arrest.”